**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
Peter Scoolidge (NY 4682100)
peter@sprfllp.com
Peter Fox (NY 4832606)
pfox@sprfllp.com
2 Park Avenue
New York, NY 10016
(212) 729-7708 tel
*Attorneys for Defendants Hieusys, LLC,*
*Colin LeMahieu, Troy Retzer, and Mica Busch*

**ZUCKERMAN SPAEDER LLP**
Shawn Naunton (NY 3958691)
snaunton@zuckerman.com
485 Madison Avenue
New York, NY 10022
(212) 704-9600 tel
*Attorneys for Defendant Zack Shapiro*

**CORNERSTONE LAW GROUP**
Paul J. Byrne (SBN 190860)
pbyrne@cornerlaw.com
351 California St Ste 600
San Francisco CA 94104
(415) 357-2094 tel
(415) 655-8238 fax
*Attorneys for Defendants Hieusys, LLC, Colin*
*LeMahieu, Troy Retzer, Mica Busch, and Zack Shapiro*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FABIAN, individually; and on behalf of All Others Similarly Situated; <br><br> *Plaintiff*, <br><br> v. <br><br> NANO f/k/a RAIBLOCKS f/k/a HIEUSYS, LLC; COLIN LEMAHIEU; MICA BUSCH; ZACK SHAPIRO; TROY RETZER; BG SERVICES, S.R.L. f/k/a BITGRAIL S.R.L. f/k/a WEBCOIN SOLUTIONS; AND FRANCESCO "THE BOMBER" FIRANO, <br><br> *Defendants*. | Case Number: 4:19-cv-54-YGR <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE PLAINTIFF'S FIRST AMENDED COMPLAINT FOR *FORUM NON CONVENIENS*** <br><br> DATE: February 11, 2020 <br> TIME: 2:00 PM |

**PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Points and Authorities, the Declaration of Massimo Caiazza, the Declaration of Monica Iacoviello, the Declaration of Peter Scoolidge, Esq., the Declaration of Colin LeMahieu, on behalf of himself and Hieusys, LLC, the Declaration of Mica Busch, the Declaration of Troy Retzer, the Declaration of William Belmont, the Declaration of Zack Shapiro, and the Declaration of Jasmine Weg, Esq., and the exhibits annexed thereto, Defendants Hieusys, LLC, Colin LeMahieu, Troy Retzer and Mica Busch, and Zack Shapiro (the "Nano Defendants"), by their undersigned attorneys will move this Court, before the Honorable Yvonne Gonzalez Rogers, United States District Judge for the Northern District of California, at the United States District Court, Oakland Courthouse, Courtroom 1 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, at 2:00 PM on February 11, 2020, for an order dismissing the First Amended Complaint based on the doctrine of forum non conveniens.

Date: December 23, 2019                    Respectfully submitted,

/s/ *Peter Fox*_____
Peter Fox
Peter Scoolidge
**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
*Attorneys for Defendants Hieusys, LLC,*
*Colin LeMahieu, Troy Retzer, and Mica Busch*

/s/ *Shawn Naunton*_____
Shawn Naunton
Vanessa I. Garcia
**ZUCKERMAN SPAEDER LLP**
*Attorneys for Defendant Zack Shapiro*

/s/ *Paul J Byrne*_____
Paul J. Byrne
**CORNERSTONE LAW GROUP**
*Attorneys for Defendants Hieusys, LLC, Colin LeMahieu, Troy Retzer, Mica Busch, and Zack Shapiro*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

DISCUSSION ..................................................................................................................................5

I.      THE *FORUM NON CONVENIENS* STANDARD ....................................................5

II.     ITALY IS AN ADEQUATE ALTERNATIVE FORUM .........................................11

III.   PRIVATE AND PUBLIC INTEREST FACTORS FAVOR DISMISSAL............................12

     a.     Private Factors ..............................................................................................12

     b.     Public Interest Factors ..................................................................................22

CONCLUSION ..............................................................................................................................25

DEFENDANTS' MTD FOR FORUM NON CONVENIENS           Case No: 4:19-cv-54-YGR

# TABLE OF AUTHORITIES

**Cases**

330 U.S. at 524 ..............................................................................................................13

*American Dredging Company v. Miller,*
    510 U.S. 443 (1994) ....................................................................................................5

*Atlantic Marine Contr. Co. v. U.S. Dist. Court,*
    571 U.S. 49 (2013) ......................................................................................................5

*Ayco Farms, Inc. v. Ochoa,*
    862 F.3d 945 (9th Cir. 2017)................................................................................passim

*Boston Telecommc'n Group v. Wood,*
    588 F.3d 1201 (2009) ................................................................................................10

*Browne v. McDonnell Douglas Corp.,*
    504 F. Supp. 514 (N.D. Cal. 1980) ...........................................................................24

*Caijano,* 643 F.3d ..........................................................................................................11

*Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216 (2011) ...............................5, 12

*Costa Sandoval v. Carnival Corp.,*
    No. 12-CV-5517, 2014 WL 12585803 (C.D. Cal. Sept. 15, 2014)...........................11

*Coufal Abogados v. AT&T, Inc.,*
    223 F.3d 932 (9th Cir. 2000)......................................................................................23

*Delta Air Lines, Inc. v. Chimet, S.p.A.,*
    619 F.3d 288 (3d Cir. 2010)......................................................................................11

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002)..............................................................................18, 19

*Giglio Sub S.N.C. v. Carnival Corp.,*
    No. 12-CV-21680, 2012 WL 4477504 (S.D. Fla. Sept. 26, 2012) ...........................11

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947).............................................................................................5, 6, 7

*Hernandez v. Burger,*
    102 Cal. App. 3d 795 (Cal. Ct. App.1980) ................................................................24

*Hurtado v. Superior Court,*
    11 Cal. 3d 574 (Cal. 1974).........................................................................................23

*In re Air Crash at Madrid, Spain,*
    893 F.Supp.2d 1020 (C.D. Cal. 2011).......................................................................12

*Insurance Co. of North Am. v. Federal Express Corp.,*
    189 F.3d 914 (9th Cir. 1999)......................................................................................23

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                    Case No: 4:19-cv-54-YGR

*Koster v. Lumbermens Mutual Casualty Company,*
330 U.S. 518 (1947) ..................................................................................................6, 13

*Lockman Found. v. Evangelical Alliance Mission,*
930 F.2d 764 (9th Cir. 1991) ...........................................................................................13

*Lomingkit v. Apollo Educ. Grp. Inc.,*
275 F. Supp. 3d 1139 (D. Ariz. 2017) ..............................................................................17

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
583 F.3d 656 (9th Cir. 2009) .....................................................................................passim

*Lueck v. Sundstrand Corp.,*
236 F.3d 1137 (9th Cir. 2001) ...................................................................................passim

*Lueck v. Sundstrand Corp.,*
236 F.3d 1137 (9th Cir. 2001) ...........................................................................8, 11, 23

*McGhee,* 871 F.2d at 1425 ......................................................................................................24

*Membreno v. Costa Crociere S.p.A.,*
425 F.3d 932 (11th Cir. 2005) .........................................................................................11

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981) ..................................................................................................passim

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981) .................................................................................................5, 22, 24

*Ranza v. Nike, Inc.,*
793 F.3d 1059 (9th Cir. 2015) .......................................................................10, 11, 12, 21

*Ravlo Monegro v. Rosa,*
211 F.3d 509 (9th Cir. 2000) .......................................................................................5, 11, 14

*Snowney v. Harra's Entm't, Inc.,*
35 Cal. 4th 1054 (Cal. 2005) ...........................................................................................19

**Other Authorities**

George A. Berman, *Transnational Litigation* 91 (2003) ..........................................................5

DEFENDANTS' MTD FOR FORUM NON CONVENIENS | Case No: 4:19-cv-54-YGR

## INTRODUCTION[1]

This case is about a cybercrime committed in Italy. An Italian, Francesco Firano, has already been found solely liable for it, and may soon be criminally convicted. And yet James Fabian has sued Colin LeMahieu, Mica Busch, Zack Shapiro, Troy Retzer, and a defunct Texas LLC (collectively the "Nano Defendants"). Stranger still, he sued them on a theory of liability that was already considered and expressly rejected by the Italian courts. Because it would be fundamentally unfair to force the Nano Defendants to defend this claim (and two others, which also turn on events in Italian facts) without the ability to marshal the facts they need to show that Mr. Firano alone is to blame, the Nano Defendants move to dismiss this case for *forum non conveniens* in favor of the courts of Florence, Italy, where the crime occurred and where – with the benefit of third-party evidence and testimony uniquely available there – the Nano Defendants will easily defeat Mr. Fabian's claims.

Dismissal is also warranted because, as much as this case is all about Italy, it has nothing to do with California. Apart from Mr. Fabian, none of the parties or witnesses live in the State, and, apart from a few alleged mouse clicks by Mr. Fabian, no relevant acts are alleged to have taken place here. Italy has shown a profound interest in meting out justice for the crime at the center of Mr. Fabian's claims. Whereas, for the jurors and the personnel of this Court, trial would be at best an exotic tour of foreign law and language, and, more likely, a waste of time and resources that would be better used addressing a docket crowded with genuinely local disputes.

## BACKGROUND

In April 2017, the BitGrail exchange, owned by Mr. Firano, listed Nano Coins as a cryptocurrency that could be traded for other cryptocurrencies on the exchange.[2] Mr. Firano lives in Italy and the two entities he used for BitGrail's operations were a Florentine limited liability company and an Italian sole proprietorship, both with registered offices in Signa, Florence.[3] Mr. Firano's

---

[1] Familiarity with the allegations in the First Amended Class Action Complaint (the "Amended Complaint") (Dkt. No. 58) is presumed.

[2] *See* Am. Compl. ¶¶ 1, 4, 107, 112.

[3] Ex. 2A to Decl. of Monica Iacoviello ("Iacoviello Decl.") ¶ 2; Ex. 3A to Iacoviello Decl. ¶ 1.

- 1 -

partner Andrea Davoli, who is also an Italian national living in Italy,[4] took part in operating the BitGrail exchange.[5] Further, Mr. Firano had several assistants, including Anthony Gozzini and Marta Muto, who worked with him to write the BitGrail code, all of whom also reside in Italy.[6]

Mr. Firano operated BitGrail via computers located in Italy, including servers and personal computers accessible to Mr. Firano and Mr. Davoli.[7] BitGrail used two sets of code to operate the exchange – (1) the code for the Nano node; and (2) the code for the BitGrail trading platform and website.[8] The BitGrail platform, which was the user-facing solution, ran on production servers controlled by Mr. Firano and his associates in Italy.[9] Mr. Firano also ran his own Nano node software on a computer in Italy, which was used to settle user transactions initiated on the BitGrail platform.[10]

In early 2018, Mr. Firano revealed that 80% of the Nano Coins held in BitGrail's account on behalf of traders had been stolen.[11] Around the time of that revelation, Mr. Firano attempted to drain all of the BitGrail accounts and deposit the funds on his personal account on the Rock Trading platform, a European cryptocurrency exchange based in Milan, Italy.[12] A short time later, a BitGrail user petitioned to have Mr. Firano and his entities declared bankrupt by the Court of Florence, Bankruptcy Division.[13] The public prosecutor's office in Florence initiated a criminal investigation into Mr. Firano,[14] and intervened in the bankruptcy proceeding.[15] The bankruptcy court issued an emergency order for the seizure of all of the known assets of Mr. Firano along with his operating

[4] Ex. 4. to Iacoviello Decl.

[5] Iacoviello Decl. ¶ 9.

[6] Decl. of Peter Scoolidge ("Scoolidge Decl.") ¶ 2.

[7] Ex. 3A to Iacoviello Decl. ¶ 3.1.

[8] Ex 2A to Iacoviello Decl. ¶ 2.8.

[9] *Id.* ¶ 2.6.3.

[10] *Id.* ¶ 2.8.

[11] Am. Compl. ¶ 154.

[12] Ex. 2A to Iacoviello Decl. ¶ 1.2; *see also* Rock Trading, therocktrading.com/en/ (last visited December 22, 2019) (listing an address at Galleria del corso 2, 20122, Milan Italy).

[13] Ex.2A to Iacoviello Decl. ¶ 1.1; *see also* Iacoviello Decl. ¶ 2.

[14] Iacoviello Decl. ¶ 3.

[15] Ex. 2A to Iacoviello Decl. ¶ 1.2.

- 2 -

company, BG Services S.r.L. (together the "BitGrail Defendants").[16] The bankruptcy court later declared Mr. Firano and his entities bankrupt, after its appointed expert expressly found that Mr. Firano was solely to blame for the loss of the Nano Coins, and *not* the Nano developers,[17] who Mr. Firano had blamed as his sole defense.[18] The hack of BitGrail and ensuing investigation and bankruptcy litigation has attracted a great deal of media attention in Italy.[19]

The bankruptcy proceeding involved substantial forensic examination of Mr. Firano's computers and servers and his financial records.[20] The Italian bankruptcy court considered reports from four IT expert witnesses – the court-appointed expert, or "*Consulete Tecnico d'Ufficio*," Paolo Dal Checco, and three other experts hired by the parties.[21] All of these experts reside in Italy.[22] The court also considered commercial records seized from the BitGrail Defendants and evidentiary submissions by the parties.[23] None of these reports, records or submissions are public.[24]

The public prosecutor's office also appears to have collected a substantial amount evidence from the BitGrail Defendants, which it used to concluded that Mr. Firano's management of the exchange was negligent.[25] The names of the prosecutors handling the investigation, Sandro Cutingelli and Fabio Di Vizio, are known, but the investigation remains nonpublic.[26]

---

[16] Iacoviello Decl. ¶ 4.

[17] Ex. 3A to Iacoviello Decl., at 15 ("[I]t was *the BitGrail exchange* that actually requested to the [Nano] node multiple times to allow the funds to leave the wallet . . . *and not the Nano network* that allowed the multiple withdrawals." (emphasis in the original)).

[18] Ex. 2A to Iacoviello Decl. ¶ 1.3 ("Furthermore, Mr. Firano also claimed that the shortfall – originating from theft – was made possible by a bug in the Nano system that is entirely ascribable to the Nano Team . . . ."); Ex. 3A to Iacoviello Decl. at 4 ("BG and Firano argued that they had taken all reasonable actions, and that the developers of the Nano Team ought to be held liable for the missing currency.")

[19] *See* Iacoviello Decl. at ¶ 3; *see, e.g.*, Ex. 1 to Iacoviello Decl.

[20] *See* Iacoviello Decl. ¶ 8.; Ex. 2A to Iacoviello Decl. ¶¶ 2.5.1, 2.6.2-2.8; Ex. 3A to Iacoviello Decl., at 10-15.

[21] *See* Iacoviello Decl. ¶ 8.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *See* Ex. 3A to Iacoviello Decl. at 7 ("According to . . . the Public Prosecutor's Office, BG Services s.r.l. did not take all the necessary measures to ensure deposit security.").

[26] Iacoviello Decl. ¶ 3.

- 3 -

Mr. LeMahieu has rights under Italian law to participate in both the criminal and bankruptcy proceedings,[27] and plans to do so.[28]

In April 2018, Mr. Fabian's counsel initiated a lawsuit in federal court in the Eastern District of New York, seeking damages from the Nano Defendants for their alleged role in an Arizona man's losses on BitGrail.[29] After that case was resolved, Mr. Fabian, a California resident, filed an almost identical complaint in this case.[30] None of the Defendants have ties to California.

After amending his complaint,[31] and then having the majority of his claims dismissed,[32] Mr. Fabian is left with claims against the Nano Defendants for negligence, fraud, and negligent misrepresentation.[33] He alleges that he purchased Nano Coins on BitGrail on September 1, 2017,[34] and then again on December 12, 2017.[35] According to Mr. Fabian, a substantial amount of his coins were deposited with BitGrail when the exchange was frozen.[36] Remarkably, Mr. Fabian's negligence claim against the Nano Defendants is based primarily on the very Italian bankruptcy decisions that cleared them of any responsibility for the theft.[37] Adopting arguments by Mr. Firano that the Italian bankruptcy court rejected, Mr. Fabian alleges that flaws with the Nano protocol caused his alleged loss.[38] His claims for fraud and negligent misrepresentation also turn on the operation of BitGrail since they are for allegedly false statements about the safety status of the exchange at various points in

---

[27] Declaration of Massimo Caiazza ("Caiazza Decl.") ¶ 26.

[28] Declaration of Colin LeMahieu ("LeMahieu Decl.") ¶ 7.

[29] *See* Compl. (Dkt. No. 1) ¶ 11, *Brola v. Nano*, 18-CV-2048 (E.D.N.Y Apr. 6, 2018).

[30] *Compare id. with* Compl. (Dkt. 1).

[31] *See* Am. Compl.

[32] *See* Order Granting in Part and Denying in Part Mot. to Dismiss (Dkt. No. 66).

[33] *See generally id.* Mr. Fabian also sued the BitGrail Defendants, but they have not been served and, even if they are, there is no chance they will appear in this proceeding. The automatic stay of their bankruptcy cases bars enforcement of a U.S. judgment against them in Italy, Caiazza Decl. ¶ 37, and they do not appear to have any assets in the United States. *See* Exhibit 1 to Decl. of William Belmont. As discussed below, it is also doubtful that the Court has personal jurisdiction over them.

[34] Am. Compl. ¶ 191.

[35] *Id.* ¶ 192.

[36] *Id.* ¶ 195.

[37] *See* Am. Compl. ¶¶ 160-61.

[38] *See, e.g., id.* ¶¶ 21, 160-61.

- 4 -

time.[39]

## DISCUSSION

### I.    THE *FORUM NON CONVENIENS* STANDARD

The doctrine of international[40] *forum non conveniens* applied by federal courts is a species of federal common law.[41]  It is procedural in nature,[42] and thus applicable in all federal-court proceedings regardless of the basis for the court's subject matter jurisdiction.[43]  In substance, the doctrine allows a federal court to decline to adjudicate a case – notwithstanding its jurisdiction to do so – when an alternative international forum is a more appropriate place for the controversy.[44]  The decision is left to the "sound discretion" of the trial court,[45] and may only be reversed for "clear abuse" of that discretion.[46]

The lead case remains *Piper Aircraft Co. v. Reyno*,[47] in which the Supreme Court endorsed and refined a balancing test that it developed decades earlier in two, companion, domestic *forum-non-conveniens* cases – *Gulf Oil Corp. v. Gilbert*,[48] and *Koster v. Lumbermens Mutual Casualty*

---

[39] *See, e.g.*, *id.* ¶¶ 22-23.

[40] *Forum non conveniens* was once also used to dismiss cases that were better sited in other domestic courts.  *See, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  While the balancing test developed in these domestic cases remains the applicable standard, *see infra* at notes 47-49 and accompanying text (discussing *Gilbert* and *Piper Aircraft Co. v. Reyno*), the change-of-venue provisions found in Section 1404 of Title 28 of the U.S. Code are now the exclusive means for moving a case from one federal court to another.  *See Atlantic Marine Contr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013).

[41] *See* George A. Berman, *Transnational Litigation* 91 (2003); *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (2011) ("The doctrine is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances." (internal quotations omitted)).

[42] *American Dredging Company v. Miller*, 510 U.S. 443, 453 (1994).

[43] *See Ravlo Monegro v. Rosa*, 211 F.3d 509, 511-12 (9th Cir. 2000).

[44] The relevant comparison is between the alternative foreign forum and the state in which the federal court sits, rather than the United States as a whole.  *See Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 949 (9th Cir. 2017).

[45] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

[46] *Ayco Farms*, 862 F.3d at 948.  *See also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) ("[W]here the court has considered all relevant public and private interest factors, its decision deserves substantial deference." (internal quotation marks omitted)).

[47] 454 U.S. 235 (1981).

[48] 330 U.S. 501 (1947).

- 5 -

*Company*.[49] Those cases provided a non-exhaustive list of so-called "private" and "public" interest factors to guide a court's discretion as to whether to retain or dismiss an action.[50] Specifically, the Court in *Gilbert* suggested that courts consider the following factors related to the private interests of the litigants: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; (4) possibility of view of premises, if view would be appropriate to the action; (5) enforceability of a judgment if one is obtained; and (6) all other practical problems that make trial of a case easy, expeditious, and inexpensive.[51] With respect to factors bearing on public administration, the Court offered: (1) administrative difficulties related to court congestion; (2) burden of jury duty on the people of a community which has no relation to the litigation; (3) local interest in having localized controversies decided at home; and (4) avoidance of the application of foreign law.[52]

The facts of *Piper* implicated many of these factors, and another one – the existence of indispensable parties abroad – as well. *Piper* concerned a plane crash in Scotland.[53] Conflicting investigatory reports in the United Kingdom indicated that mechanical failure or pilot error caused the accident,[54] and the wreckage of the aircraft remained in Britain.[55] The estates of several of the passengers brought suit for negligence in the United States against the manufacturers of the plane and its propellers.[56] Not named in the action were the estate of the pilot, the air taxi service that operated the plane, or the company that owned the plane and was responsible for its maintenance.[57] These parties were, however, defendants in a separate lawsuit brought on behalf of the decedents in the

---

[49] 330 U.S. 518 (1947).

[50] *See Piper*, 454 U.S. at 241 (discussing *Gilbert* and *Koster*).

[51] *Gilbert*, 330 U.S. at 508.

[52] *Id.* at 330-31.

[53] *See Piper*, 454 U.S. at 238-39.

[54] *See id.* at 239.

[55] *See id.*

[56] *See id.* at 239-40.

[57] *See id.* at 240.

- 6 -

United Kingdom.[58] The district court deciding the *forum non conveniens* motion determined that Scottish law applied to the claims against one of the defendants.[59]

After reversing the Third Circuit's holding that plaintiffs may avoid dismissal under *forum non conveniens* solely by showing that the alternative forum would apply less favorable substantive law,[60] the Court analyzed the private and public interest factors of the case. It agreed with the district court that "fewer evidentiary problems would be posed if the trial were held in Scotland."[61] Specifically, the Court relied on the defendants' affidavits that they wished to call certain British witnesses, apparently to demonstrate the superseding negligence of the plane's pilot, operator and owner.[62] The Court held that the defendants were not required to identify specific individual witnesses, but need only identify *categories* of witnesses whose testimony could not be compelled from the United States.[63]

Next, the Court moved beyond the enumerated *Gilbert* factors, to give great weight to problems that the defendants would have proving the crash was someone else's fault. "Joinder of the pilot's estate, Air Navigation [the plane's owner], and McDonald [the air taxi operator] is crucial to the petitioner's defense," the Court wrote. "If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, *they will be relieved of all liability*."[64] The Court held that the burden of forcing a defendant to initiate an independent action for contribution or indemnification in a foreign court, "is sufficient to support dismissal on grounds of *forum non conveniens*."[65]

Difficulties arising from absent third-party tortfeasors, are not the only parallels between the

---

[58] *See id.*

[59] *See id.* at 243.

[60] *See id.* at 247. Indeed, the Court went on to state that "a change in substantive law should ordinarily not be given controlling or even substantial weight in the *forum non conveniens* inquiry." *Id.* Since plaintiffs usually chose the forum likely to apply the most favorable law, any other result would render the *forum non conveniens* doctrine "virtually useless." *Id.* at 250.

[61] *Id.* at 257-58.

[62] *See id.* at 259 & n.27.

[63] *See id.* at 258-59 & n.26.

[64] *Id.* at 259.

[65] *Id.* The Court also appeared to be concerned about the risk of inconsistent verdicts between the U.S. litigation and an action for contribution or indemnification in Scotland. *See id.* at 243 & n.7.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                              Case No: 4:19-cv-54-YGR

facts of *Piper* and the case at bar. Two additional facts loomed large in *Piper*: (1) foreign – Scottish – law might apply in the U.S. litigation, and (2) the foreign jurisdiction's interest in policing conduct within its own borders. Noting the district court's concern that a trial involving foreign law would be confusing to the jury and its own lack of familiarity with Scottish law, the Court held, "[c]onsideration of these problems was clearly appropriate under *Gilbert*; in that case we explicitly held that the need to apply foreign law pointed toward dismissal."[66] Furthermore, the Court recognized Scotland's "very strong" interest in an accident that occurred in its airspace.[67] Needless to say, as the regulator its own domestic air traffic, the United Kingdom's interest in the compensation and deterrence effects of civil litigation arising from the crash dwarfed that of the state of Pennsylvania. Quoting *Gilbert*, the Court stated that "there is 'a local interest in having localized controversies decided at home.'"[68]

The Ninth Circuit follows the Supreme Court's lead in *Piper*. In a case with notably similar facts to *Piper*, the court in *Lueck v. Sundstrand Corp.*, affirmed the dismissal of negligence claims against U.S. manufacturers of the ground proximity warning system of a plane that crashed in New Zealand.[69] As in *Piper*, a local investigation indicated that the negligence of the airline played at least some role in the accident.[70] As in *Piper*, a related lawsuit was pending abroad against the airline.[71] And, as in *Piper*, the airline – and other third parties with relevant evidence, such as the New Zealand government – were presumptively outside of the reach of U.S. courts.[72]

After rejecting the appellant's argument that New Zealand was not an adequate alternative forum,[73] the court turned to the *Gilbert* factors – which it expanded somewhat to also include "the residence of the parties and the witnesses" and "the forum's convenience to the litigants."[74] In its

[66] *Id.* at 260.

[67] *Id.*

[68] *Id.* (quoting *Gilbert*, 330 U.S. at 509).

[69] 236 F.3d 1137, 1140 (9th Cir. 2001).

[70] *See id.* at 1141.

[71] *See id.* at 1142.

[72] *See id.* at 1146-47.

[73] *Id.* at 1143.

[74] *Id.* at 1145.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                    Case No: 4:19-cv-54-YGR

review of the district court's decision, two factors appeared to be dispositive.

First, the court recognized that the defendants' "fair share" of relative fault could be only assessed "in relation to" the absent airline's liability.[75] The court approached this problem from an evidentiary perspective, rather than focusing on impleader as had the Court in *Piper*, but the result was the same. Because the defendants needed to be able to put the negligence of absent third-parties before the factfinder, the case was better adjudicated in a forum where those parties were subject to jurisdiction. According to the court, while relevant evidence in the United States was under the control of the plaintiff and defendants – and hence could be brought to the alternative forum – documents and witnesses in New Zealand were "not so easily summoned to the United States."[76] Such material included evidence under the control of the airline and government crucial to demonstrating that the airline's employees, rather than the defendants, caused the accident.[77] According to the court, "because the district court cannot compel production of much of the New Zealand evidence, whereas the parties control, and therefore can bring, all of the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal."[78]

The second major factor on which the court in *Lueck* focused was New Zealand's "extremely high" interest in the crash, which included an "ongoing criminal probe" and "significant attention by the local media."[79] By contrast, the court noted, only one of the five defendants was at home in the U.S. forum, Arizona.[80]

In the years since *Lueck*, the court has rendered a number of similar decisions. In *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, it affirmed dismissal of a wrongful death case arising

---

[75] *Id.* at 1146.

[76] *Id.*

[77] *See id.* at 1146-47.

[78] *Id.* at 1147. The court also focused on the existence of related litigation in New Zealand, involving, "a significant number of the same witnesses" and "same evidence." *Id.* Given that the defendants were willing to travel abroad and participate in those proceedings, but that the airline could not be brought to the United States, it was "all the more clear that the private interest factors weigh in favor of dismissal." *Id.*

[79] *Id.*

[80] *Id.*

- 9 -

from a scuba diving accident in Mexico.[81] There, most of the evidence was in Mexico because – as with the ill-fated flights in *Piper* and *Lueck* – the scuba diving trip had been "arranged, documented, outfitted, undertaken, and investigated" abroad.[82] The court agreed with the district court's conclusion that Mexico's "substantial interest in holding businesses operating in Mexico accountable for insuring that foreign tourists are treated fairly," favored dismissal, as did the fact that Mexican law would likely apply to at least some issues.[83] In *Ayco Farms, Inc. v. Ochoa*, the court affirmed the district court's decision to dismiss a suit against Mexican defendants over a contract negotiated and allegedly breached in Mexico, and where related litigation was already pending in Mexico.[84] The court noted with approval the district court's prediction that many important witnesses could not be compelled to appear in California and that Mexican law would likely apply.[85] And, in *Ranza v. Nike, Inc.*, the court conducted its own *forum non conveniens* analysis in the first instance and used it as a separate basis to affirm dismissal of a civil rights suit based on allegations of employment discrimination in the Netherlands that had already been rejected by a Dutch tribunal.[86] The most important evidence and witnesses were located abroad,[87] and the court noted the Netherland's "strong interest in ensuring that the businesses operating within its borders do not engage in discrimination."[88] Of particular interest here, the court viewed the U.S. forum's interest in the dispute as "significantly diminished here because the district court would be relitigating claims already decided in a foreign proceeding."[89]

The three cases this century where the Ninth Circuit has reversed decisions to dismiss cases on *forum non conveniens* grounds all reflect concerns about either the depth of the alternative forum's

---

[81] 583 F.3d 656, 659-60 (9th Cir. 2009).

[82] *Id.* at 665.

[83] *Id.*

[84] 862 F.3d, at 950-51.

[85] *See id.*

[86] 793 F.3d 1059, 1065 (9th Cir. 2015).

[87] *See id.* at 1078.

[88] *Id.* at 1079.

[89] *Id.*

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                    Case No: 4:19-cv-54-YGR

connection to the dispute[90] or, in two of the three, the defendant's commitment to actually litigate there.[91]

## II. ITALY IS AN ADEQUATE ALTERNATIVE FORUM

A case will only be dismissed for *forum non conveniens* if an adequate alternative forum exists.[92] "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction."[93] Only "where the remedy offered by the other forum is clearly unsatisfactory" will amenability to process fail to suffice.[94] This is an extremely low bar. "A foreign forum must merely provide *some* remedy."[95] In other words, for an alternative forum to fail to be adequate, the remedy provided there must be "so clearly inadequate or unsatisfactory, that it is no remedy at all."[96]

Italy is clearly an adequate alternative forum. All of the Nano Defendants are amenable to service of process there since they have agreed to submit to the Italian court's exercise of jurisdiction over them as a condition of dismissal.[97] The courts of Italy are open, impartial, and authorized to provide full compensatory damages for the wrongs alleged in the Amended Complaint.[98] Indeed, the adequacy of relief available in Italian courts for tort claims is rarely even contested.[99] And, where

[90] *See Boston Telecommc'n Group v. Wood*, 588 F.3d 1201, 1208 (2009) (highlighting that no prospective party resided in Slovakia, the proposed alternative forum, and duplicates of all evidence located there appeared to be available in California).

[91] *See See Caijano*, 643 F.3d at 1234 (holding that it was an abuse of discretion not to place mitigating condition on dismissal where "there is substantial reason to suspect that Occidental will move to dismiss this lawsuit based on the Peruvian statute of limitations."); *Ravelo Monegro v. Rosa*, 211 F.3d at 514 (holding dismissal was an abuse of discretion where the district court failed to consider evidence that one defendant's willingness to litigate in the Dominican Republic, where he faced imprisonment, was "feigned").

[92] *See Piper*, 454 U.S. at 245 n.22.

[93] *Id.* (internal quotation marks omitted).

[94] *Id.*

[95] *Ranza*, 793 F.3d at 1077 (emphasis added).

[96] *Lueck*, 236 F.3d, at 1143 (internal quotation marks omitted).

[97] *See* LeMahieu Decl. ¶ 6; Decl. of Mica Busch ("Busch Decl.") ¶ 3; Decl. of Troy Retzer ("Retzer Decl.") ¶ 3; Decl. of Zack Shapiro ("Shapiro Decl.") ¶ 3.

[98] *See* Caiazza Decl. ¶¶ 1-13, 32-35, 39-44.

[99] *See, e.g.*, *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 291 (3d Cir. 2010) (noting the adequacy of Italian courts to adjudicate claims related to stolen cargo is not contested); *Membreno v. Costa Crociere S.p.A.,* 425 F.3d 932, 937 (11th Cir. 2005) (accepting without analysis adequacy of Italian courts to hear claim).

DEFENDANTS' MTD FOR FORUM NON CONVENIENS            Case No: 4:19-cv-54-YGR

adequacy is contested, the objectors invariably lose.[100]

## III. PRIVATE AND PUBLIC INTEREST FACTORS FAVOR DISMISSAL

### A. Private Factors

In recent years, the Ninth Circuit's analysis of the private interest factors has sometimes followed the expanded set of *Gilbert* factors set out by the court in *Lueck*,[101] and other times focused only on a subset of these factors.[102] The court in *Lueck* instructed district courts to consider "any or all" of its enumerated factors,[103] and, indeed, courts in this Circuit sometimes consolidate several of the overlapping ones.[104] Nevertheless, out of an abundance of caution, all seven of *Lueck*'s factors are address below in turn.[105]

### *Residence of Parties and Witnesses*

Mr. Fabian is the only party alleged to reside in California.[106] Mr. LeMahieu, on whom Mr. Fabian's allegations focus, has lived, most recently, in San Sebastian, Spain and Croatia.[107] Mr. Shapiro lives in New York, Mr. Retzer lives in Boston, and Mr. Busch lives in Illinois.[108] The "Nano" business organization named in the Amended Complaint,[109] was a Texas limited liability company that

---

[100] *See Costa Sandoval v. Carnival Corp.*, No. 12-CV-5517, 2014 WL 12585803, at *4 (C.D. Cal. Sept. 15, 2014) (holding Italy adequate to hear negligence claims related to shipwreck); *Giglio Sub S.N.C. v. Carnival Corp.*, No. 12-CV-21680, 2012 WL 4477504, at *13 (S.D. Fla. Sept. 26, 2012) (same).

[101] *See, e.g.*, *Ayco Farms*, 862 F.3d at 951; *Carijano*, 643 F.3d at 1229.

[102] *See, e.g.*, *Ranza*, 793 F.3d at 1078; *Loya*, 583 F.3d at 664.

[103] 236 F.3d at 1145.

[104] *See, e.g., In re Air Crash at Madrid, Spain*, 893 F.Supp.2d 1020, 1030 (C.D. Cal. 2011) ("The Court addresses the factors relating to witnesses . . . together and then address the remaining factors in turn.").

[105] The seven factors are: "(1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Lueck*, 236 F.3d at 1145 (internal quotation marks omitted).

[106] *See* Am. Compl. ¶¶ 31-38.

[107] LeMahieu Decl. ¶ 2.

[108] Busch Decl. ¶ 2; Retzer Decl. ¶ 2; Shapiro Decl. ¶ 2.

[109] *See* Am Compl. ¶ 32.

- 12 -

was never capitalized, is now inactive, and has no assets.[110] Mr. Firano is alleged to be "believed" to be in Italy;[111] and, indeed, he is.[112] B.G. Services SrL is a limited liability company organized under the laws of Italy,[113] where Mr. Fabian alleges it has operated the BitGrail exchange.[114]

Unlike the plaintiffs in *Piper* and *Lueck*, Mr. Fabian has chosen as a forum his home state. It is true that the choice of forum of a U.S. plaintiff is entitled to more deference than that of a foreign plaintiff,[115] and the choice of a U.S. plaintiff who actually resides in the forum, more deference than the choice of an out-of-state U.S. plaintiff.[116] But such deference is "far from absolute,"[117] and "the presence of American plaintiffs . . . is not in and of itself sufficient to bar a district court from dismissing a case on the ground of forum non conveniens."[118] Rather, the Court in *Piper* made clear that local plaintiffs only "deserve *somewhat* more deference than foreign plaintiffs."[119] And, it continued, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."[120]

Moreover, in *Koster* – one of the two seminal Supreme Court decisions discussed above – the Court ruled that deference to a local plaintiff's choice of forum is "considerably weakened" in circumstances "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts."[121] Indeed, in affirming dismissal of the case, the Court noted

---

[110] LeMahieu Decl. ¶ 5.

[111] Am. Compl. ¶ 38.

[112] Iacoviello Decl. ¶ 9.

[113] Ex. 2A to Iacoviello Decl. ¶ 2; Ex. 3A to Iacoviello Decl. ¶ 1.

[114] Am. Compl. ¶ 37.

[115] *See Piper*, 454 U.S. at 255-56.

[116] *Cf. Ayco Farms*, 862 F.3d at 950 ("A U.S. citizen plaintiff is entitled to less deference in his choice of forum if he does not reside in that forum.").

[117] *Loya*, 583 F.3d at 665 (quoting *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991).

[118] *Id.*; s*ee also Piper*, 454 U.S. at 255 n.23 ("A citizen's forum choice should not be given dispositive weight, however.").

[119] *Piper*, 454 U.S. at 255 n.23 (emphasis added).

[120] *Id.*

[121] 330 U.S. at 524.

- 13 -

that other plaintiffs had asserted the same claims against the same defendants in other fora.[122]

This exactly such a case. Far from there being only "two parties to a dispute," where "there is good reason why it should be tried in the plaintiff's home forum," [123] Mr. Fabian seeks to represent a nationwide class of BitGrail customers, each – he maintains – with claims against the defendants indistinguishable from his or any other member of the putative class.[124] There is nothing special about Mr. Fabian's claims apart from the fact that he, just like Mr. Brola, who allegedly lives in Arizona,[125] happened to connect with the Silver Miller law firm to assert them. This case could have been brought anywhere in the world where Mr. Fabian's lawyers found a willing plaintiff, as the *Brola* action – the complaint which was almost word for word identical to the original complaint in this case – amply demonstrates.[126] Under these circumstances, Mr. Fabian's choice of his home state as forum is entitled to little or no deference.

None of the Defendants have anything to do with California. And the only conceivable witness residing in the state is Mr. Fabian himself. Except for Mr. Busch in Chicago, all of the other party witnesses are on the East Coast or abroad, and all third-party witnesses are in Italy. These Italian witnesses include: (1) the bankruptcy court-appointed expert, the *Consulete Tecnico d'Ufficio*, Mr. Dal Checco, who determined that Mr. Firano was responsible for the hack; the experts retained by Mr. Firano, the public prosecutor's office, and the principal creditor, Eirik Ulversøy, in the same proceeding; Mr. Firano's partner, Mr. Davoli; the assistants who helped Messrs. Firano and Davoli operate BitGrail; and the prosecutors investigating Mr. Firano's criminal liability in the matter, Messrs. Cutrignelli and Di Vizio.[127]

Such an absolute lack of connection to California is in contrast even to *Piper* and *Lueck*, where at least one defendant, and multiple third-party witnesses, resided in the plaintiff's chosen forum.[128] In

---

[122] *See id.* at 524 n.3.

[123] *Id.* at 524.

[124] Am. Compl. ¶¶ 51-53.

[125] *See* Compl. (Dkt. No. 1) ¶ 11, *Brola v. Nano*, 18-CV-2048 (E.D.N.Y Apr. 6, 2018).

[126] *Compare id. with* Compl. (Dkt. 1).

[127] Scoolidge Decl. ¶ 2; Iacoviello Decl. ¶¶ 3, 7, 8, 9.

[128] *See Piper*, 454 U.S. at 239; *Lueck*, 236 F.3d, at 1147.

- 14 -

this way, this case fits the "first type" of *forum non conveniens* case identified by Judge Fletcher in *Ravelo Monegro v. Rosa*, where a "domestic plaintiff chooses a forum with little or no relation to either the defendant or the action in order to disadvantage the defendant."[129] And, as will be seen in the discussion of access to witnesses and evidence, the disadvantage is calculated and clear.

*Convenience to the Litigants*

Although travel to California is marginally cheaper and shorter for Messrs. Retzer, Bush and Shapiro than travel to Italy, travel to Italy is significantly more convenient for Mr. LeMahieu, who lives in Europe.[130] (Additionally, Mr. Retzer finds travel to Italy to be more convenient.[131]) Mr. LeMahieu is the central Nano player in the Amended Complaint,[132] and so he is the most likely to need to devote significant attention to trial preparation and participation. The cheapest flight from Madrid to Rome, booked a month in advance, currently costs $65, and takes about two and a half hours.[133] The cheapest one from Madrid to San Francisco, reserved the same amount of time in advance, costs $551 and takes over 18 hours.[134] Travel from Zagreb to Rome is more difficult than from Madrid, but still nothing like a transatlantic flight.[135] Moreover, given the lack of any specific allegations of wrongdoing by Messrs. Retzer and Busch it is highly doubtful that they would remain defendants were the case to go to trial. In any event, as made clear by their various waivers, all of the Nano Defendants are willing – indeed strongly prefer – to litigate this case in Italy.

The bankruptcy stay prevents the BitGrail Defendants from participation in any civil litigation, either in California or in Italy.[136]

*Access to Physical Evidence*

[129] *See* 211 F.3d at 512 (citing *Gilbert* and *Koster* as examples).

[130] LeMahieu Decl. ¶ 2.

[131] Retzer Decl. ¶ 2.

[132] For example, the Amended Complaint contains at least 19 references to statements made by Mr. LeMahieu, compared to nine for Mr. Shapiro and three each for Messrs. Busch and Mr. Retzer.

[133] *See* Decl. of Jasmine Weg ("Weg Decl.") ¶ 8; Ex. 2 to Weg Decl.

[134] *See* Ex. 2 to Weg Decl.

[135] *See id.*

[136] Caiazza Decl. ¶ 37.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                    Case No: 4:19-cv-54-YGR

When comparing access to evidence in its home forum to that in the alternative forum, "a court's focus should not rest on the number of witnesses or the quantity of evidence in each locale. Rather, a court should evaluate the materiality and importance of anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum."[137] Key to this inquiry is the nature of the evidence in the hands of foreign third parties since parties may be made to bring their own evidence from abroad.[138]

Here, not only are the seized BitGrail materials and related reports now in the hands of the Italian bankruptcy trustee and the public prosecutor's office the most important *third-party* evidence in the case, they are the most important documentary evidence in the case *of any kind* because they completely absolve the Nano Defendants of liability on the negligence claim. This evidence is in Italy, and hence – while accessible there – beyond this Court's authority to compel.

Mr. Fabian's negligence claim against the Nano Defendants rests on his allegation that there was a flaw in the software code for the Nano Coins that facilitated the hack of BitGrail.[139] This theory of the theft was completely and expressly *rejected* by the Italian court administering the BitGrail Defendants' bankruptcies in the *very same* two opinions on which Mr. Fabian based his allegations.[140] The Italian bankruptcy court found that Mr. Firano was to blame for the hack; and, indeed, Mr. Firano remains under criminal investigation.[141]

Just like with respect to the acts and omissions of the air carriers in *Piper* and *Lueck,* if the Nano Defendants "can show that the accident was caused not by a design defect, but rather by the

---

[137] *Lueck*, 236 F.3d at 1146.

[138] *See id.* at 1147.

[139] *See, e.g.*, Am. Compl. ¶¶ 21, 160-61. After the majority of his claims were dismissed, Mr. Fabian has attempted to expand the number of acts and omissions which contends were negligent. *See* Joint Case Management Statement ("JCMS") (Dkt. No. 73), at 3. As the Nano Defendants pointed out, several of those theories were already rejected by the Court when Mr. Fabian presented them in his Amended Complaint under the rubric of different claims, such as fraud by omission. *See id.* at 4. In any event, proximate causation is an element of negligence irrespective of the breach, and so the fact that Mr. Firano alone caused the alleged loss of Mr. Fabian's Nano Coins is dispositive of the claim.

[140] *See, e.g.* Ex. 3A to Iacoviello Decl., at 15.

[141] Iacoviello Decl. ¶ 3.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                    Case No: 4:19-cv-54-YGR

negligence of [Mr. Firano or others working at BitGrail] they will be relieved of all liability."[142] Or, to adapt language from *Lueck*, the Nano Defendants' "fair share" of fault can only be determined "in relation" to Mr. Firano and BitGrail.[143] Clearly, Mr. Firano's conduct is at issue in this case.[144]

Fortunately, such evidence of Mr. Firano's conduct – or misconduct as the case may be – is plentiful. But it is only in Italy, and, for all practical purposes, only accessible there.

Shortly after creditors filed a petition to force BG Services and Mr. Firano into bankruptcy, the bankruptcy court issued an emergency order authorizing the seizure of the both parties' financial records and computer equipment.[145] The court's expert, Mr. Dal Checco, then relied on these materials, and reports from various parties' experts to write a report about the cause of the BitGrail hack.[146] The bankruptcy court, in turn, relied on Mr. Dal Checco's report and the commercial records of the BitGrail Defendants to conclude that Mr. Firano was responsible for the exchange's losses.[147]

The opinions of the bankruptcy court are public, but the underlying evidence is not.[148] Thus, to obtain copies of Mr. Dal Checco's report, the reports of the other parties' experts, and the records Mr. Dal Checco relied upon, as well as to have an opportunity to subject the BitGrail software to independent expert inspection, the Nano Defendants will need a court order to compel production of documents and things from the bankruptcy trustee, Tommaso Ariani, and the individual expert witnesses, all of whom live in Italy.[149] This Court lacks jurisdiction over these Italian parties, and so cannot issue such an order.

---

[142] *Piper*, 454 U.S. at 259.

[143] *Lueck*, 236 F.3d, at 1146.

[144] The BitGrail Defendants' activities are no less crucial for Mr. Fabian's other two remaining claims, for fraud and negligent misrepresentation. These claims turn on allegedly false statements about the safety of accounts deposited on the BitGrail exchange, *see, e.g.*, Am. Compl. ¶¶ 22-23. Obviously, a statement is only actionable if it was false at the time it was made, *see Lomingkit v. Apollo Educ. Grp. Inc.*, 275 F. Supp. 3d 1139, 1160 (D. Ariz. 2017), and so there is a factual question as to whether accounts on BitGrail were, in fact, secure at various points in time.

[145] Iacoviello Decl. ¶ 4.

[146] *Id.* ¶ 8.

[147] *Id.*; Ex. 3A to Iacoviello Decl., at 17.

[148] Iacoviello Decl. ¶ 8.

[149] *Id.* ¶ 8.

- 17 -

An Italian court can compel such production, however. As Massimo Caiazza makes clear in his declaration, a streamlined process for third-party discovery is part of Italian civil procedure.[150] There is also a procedure under the Hague Convention and related Italian law for judicial assistance to foreign proceeding such as this case, but securing such materials through this process is much more difficult.[151] It is time consuming, expensive, and complicated.[152] Moreover, resort to it to assist a U.S. proceeding violates the principle of "equality of arms" since the evidence collection is limited to that allowed under Italian law, whereas the counterparty may avail itself of full U.S. pre-trial discovery.

For these reasons, access to materials held by the public prosecutor's office through the Hague Convention, such as investigation reports, and a copy of BitGrail's database, is just as doubtful. While the Nano Defendants could potentially access such materials by becoming civil parties to the criminal proceeding, they would need to wait until the public prosecutor indicts Mr. Firano,[153] which may or may not occur before a trial in this case.

Documents and physical evidence in the hands of the bankruptcy trustee, expert witnesses, and the public prosecutor's office are only part of the third-party evidence located in Italy. To adequately defend themselves on the basis of BitGrail's misconduct, the Nano Defendants also need documents held by Mr. Firano's business partner, Mr. Davoli, and their assistants who helped to operate the exchange. By contrast, there does not appear to be *any* third-party evidence located in the United States or elsewhere outside of Italy.

As for party evidence, like in *Lueck*, it may all be brought to Italy by the parties themselves – to the extent it is not already there, as is the case with any evidence that might be still controlled by the BitGrail Defendants.

The same is not true, however, with respect to California. While the Nano Defendants would bring their party evidence to this Court were the case to proceed, Mr. Firano and BG Services will never appear here. To begin with, they have no incentive to appear since they have no known assets in

---

[150] *See* Caiazza Decl. ¶ 15.

[151] *See id.* ¶¶ 30-31.

[152] *Id.*

[153] *See* Caiazza Decl. ¶ 26.

the United States,[154] and a U.S. judgment against them would be unenforceable in Italy because these proceedings would have been in violation of the bankruptcy court's automatic stay.[155] Moreover, it appears unlikely that the Court even has personal jurisdiction over them.[156] Finally, even if he wanted to participate in this case, it is not clear that Mr. Firano is permitted to travel abroad, while he remains under criminal investigation in Italy.

None of this should come as a surprise to Mr. Fabian, who notwithstanding his pending, futile, motion for alternative service, has never demonstrated a real interest in bringing the BitGrail parties into these proceedings. We now know from those motion papers, that Mr. Fabian's counsel waited until October 25, 2019, *more than 10 months* after this case was filed, to so much as attempt to contact the BitGrail Defendants.[157] And, still, contrary to Mr. Fabian's representation in the motion papers,[158] his counsel did not request a waiver of service, nor even mention that they were defendants in this action – let alone meet the notice requirements of Rule 4(d) of the Federal Rules of Civil Procedure.[159] Nothing other than gamesmanship could plausibly explain the delay or incompetent effort in effecting a waiver of service.[160] In truth, it appears that, having based his pleadings on documents (the Italian

---

[154] *See* Exhibit 1 to Decl. of William Belmont.

[155] *See* Caiazza Decl. ¶ 37.

[156] Even though California's long-arm statute reaches to the outer limits of the Due Process Clause, *see Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002), the BitGrail Defendants' utter lack of a connection to the State raises serious doubts about whether they are amenable to suit here. Mr. Fabian's claims against the BitGrail Defendants for: (1) breach of contract; (2) breach of fiduciary duty; and (3) constructive fraud, are founded on allegations of transactions that were conducted exclusively in Italy, *see* [Mot. to Dismiss]. There is nothing to indicate that the BitGrail Defendants' specifically targeted residents of California to trade on their exchange, *cf. Snowney v. Harra's Entm't, Inc.*, 35 Cal. 4th 1054, 1064 (Cal. 2005) (website advertisement that lead to the contract "specifically targeted residents of California), or that any fiduciary relationship was cemented through communications into the State, *cf. Dole Food*, 303 F.3d at 1112 (fiduciaries their duty through direct communications to California residents).

[157] *See* Ex. 1 to Decl. of John A. Carriel (Dkt. No. 81-3).

[158] *See* Pl's Br. in Supp. of Mot. for Leave to Effect Alternative Service (Dkt. No. 81-1), at 2.

[159] *See* Ex. 1 to Decl. of John A. Carriel.

[160] At oral argument on the motion to dismiss the Amended Complaint, Mr. Fabian's counsel told the court that he had not attempted to serve the BitGrail Defendants because their participation in the action "would only further deplete any of the potential funds recovered for the class [in the bankruptcy] because he would likely use BitGrail funds to defend that action." Oral Ar. Tr. 4:16-18. This explanation makes no sense since – as Mr. Fabian's counsel must have surely known – all of the BitGrail Defendants' known assets are in the custody of the bankruptcy trustee, *see* Iacoviello Decl. ¶

*(Footnote continued)*

- 19 -

bankruptcy opinions) that make clear the judgment-proof BitGrail Defendants are solely responsible for his alleged losses, Mr. Fabian's case depends on denying the Nano Defendants an opportunity to prove it.

*Unwilling Witnesses*

The analysis of unwilling witnesses tracks closely that of access to physical evidence. All of the party witnesses – except for Mr. Firano, who, as discussed above, is extraordinarily unlikely to submit to this Court's jurisdiction – may be made to testify either here or in Italy. But *all* of the third-party witnesses – whose testimony is critical to establishing Mr. Firano's responsibility for the hack – reside in Italy, and so cannot be compelled to appear for trial in California. As noted above, these witnesses include Mr. Dal Checco, the other experts who submitted reports in bankruptcy proceedings, Mr. Davoli and other individuals who helped run BitGrail, and Messrs. Cutrignelli and Di Vizio of the public prosecutors' office. By contrast, these witnesses could all be made to give testimony in Italy on pain of criminal sanction – with an opportunity for the Italian judge, who is the ultimate factfinder, to engage in "free interrogatory" with them.[161]

Put simply, if this case proceeds in the Northern District of California, the Nano Defendants will not be able to call the key witnesses they need to demonstrate Mr. Firano's sole liability for Mr. Fabian's alleged loss. If it goes forward in Italy, they will be able to do so.

*The Cost of Bringing Willing Witnesses*

To the extent any of the third-party witnesses identified above are willing to testify without a court order, as Mr. Dal Checco and the public prosecutors might be, the travel cost of bringing them to this courthouse is very high relative to bringing them to court in Florence, where Mr. Fabian's case would most likely be venued.[162] Indeed, the comparative inconvenience of travel to the West Coast might well be the difference between these witnesses cooperating or not.

For the party witnesses, the analysis is the same as under the convenience-to-litigants factor.

---

7, and could not be used to defend this action. (Yet one more reason why the BitGrail Defendants will never appear in this Court.).

[161] *See* Caiazza Decl. ¶ 15.

[162] *See id.* ¶ 35.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS          Case No: 4:19-cv-54-YGR

*Enforceability of Judgment*

Under the Full Faith and Credit Clause of the Constitution, a judgment of this Court would be automatically recognized and enforceable against Messrs. Busch, Retzer, and Shapiro, who all live in the United States. One would not be so against Mr. LeMahieu, however, who splits his time between various countries in Europe. U.S. judgments are subject to at least some judicial scrutiny abroad, with the criteria for review ranging from the subject matter of the litigation to procedures employed in rendering judgment. By contrast, all of the Nano Defendants have waived any objections to the recognition and enforcement of an Italian judgment against them anywhere in the world.[163]

*All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive*

There are already three proceedings pending in Italy over the same core factual issues as this case. Two bankruptcy cases, and a criminal investigation. And, indeed, the question of responsibility for the hack has already been resolved in the bankruptcy cases. Mr. LeMahieu intends to file a proof of claim against Mr. Firano and BG Services for indemnification for the costs of defending against Mr. Fabian's baseless claims.[164] He also intends to intervene in the criminal proceeding pending against Mr. Firano as a civil "injured party," [165] which is allowed under Italian law.[166] Mr. LeMahieu plans to seek moral damages against Mr. Firano for falsely blaming him for the hack of BitGrail in the press and in (rejected) arguments before the bankruptcy court.

Moving these proceedings to Italy would create numerous efficiencies. To begin with, Mr. LeMahieu would only need a single set of lawyers – Italian counsel. Beyond that, he would be able to use judicial documents from one proceeding in another proceeding freely and easily since there would be no need for translation or explanation of procedural context. In no case would this ability be more convenient than with respect to the two bankruptcy court opinions, which have already decided the core factual issues on which Mr. Fabian's negligence claim turns.[167] And, should Mr. Firano be

---

[163] *See* LeMahieu Decl. ¶ 6; Busch Decl. ¶ 3; Retzer Decl. ¶ 3; Shapiro Decl. ¶ 3.

[164] LeMahieu Decl. ¶ 7.

[165] *See id.*

[166] *See* Caiazza Decl. ¶ 26.

[167] *See* Caiazza Decl. ¶¶ 19 (discussing the weight afforded Italian judicial findings in separate Italian proceedings). In *Ranza*, the previous resolution in the alternative forum of facts underpinning the

*(Footnote continued)*

criminally convicted for either stealing the Nano Coins himself, or his gross negligence in managing the exchange, the issue of liability for Mr. Fabian's alleged loss will be definitively resolved for the purposes of Italian law.[168]

### B. Public Interest Factors

The court in *Lueck* noted that district courts generally consider four highly-related public interest factors: "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum."[169]

#### *Local Interest of Lawsuit*

Of all the interest factors, perhaps this one tilts the most toward dismissal. Public interest in the hack of BitGrail in Italy is very high. Like air travel in Scotland[170] and New Zealand,[171] or the tourist in Mexico,[172] there is significant concern in Italy about safety and security of the local financial markets. This is why media coverage of the BitGrail hack and its aftermath has been so intense.[173] And, as already discussed, just as in *Lueck*,[174] there is an ongoing criminal probe into the catastrophe – maybe the strongest signal that can be given about the seriousness with which the public takes an accident or loss. Common sense dictates that the forum where the theft occurred has the greatest interest in seeing justice done, for victims and the accused alike.

California, on the other hand, has almost no interest in this dispute. None of the Defendants reside in the State. None of the activities at issue – other than a few mouse clicks by Mr. Fabian – are alleged to have taken place there. None of the likely third-party witnesses are local. Indeed, as

---

plaintiff's claims was a key factor in the court's decision to affirm dismissal of the case. *See* 793 F.3d at 1065.

[168] *See id.* ¶ 20.

[169] 236 F.3d at 1147.

[170] *See Piper*, 454 U.S. at 260.

[171] *See Lueck*, 236 F.3d at 1147.

[172] *See Loya*, 583 F.3d at 665.

[173] *See, e.g.*, Ex. 1 to Iacoviello Decl.

[174] *See* 236 F.3d at 1147.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS                    Case No: 4:19-cv-54-YGR

discussed above under the residence-of-parties-and-witnesses factor, this case stands apart from even *Piper* and *Lueck* for its near total detachment from the subject matter of the dispute. At least in those cases, the plaintiff's forum had an interest in policing the activities of in-state defendants.[175]

### *Familiarity with Governing Law*

The Ninth Circuit has clarified that – unless certain federal statutes are implicated – district courts do not need to make a definitive choice of law determination for the purposes of deciding a *forum non conveniens* motion.[176] That said, the fact that Scottish law would "likely" apply to the claims against one of the defendants was important in the Supreme Court's decision in *Piper*,[177] and the likely application of foreign law has factored into the Ninth Circuit's analysis in multiple cases as well.[178] Here it appears that Italian law applies to at least the negligence claim.

California choice-of-law rules control Mr. Fabian's claims,[179] which means the application of California's three-step "governmental interest" analysis.[180] The first step, identifying a difference between California and Italian law, is met because punitive damages, which Mr. Fabian seeks on all of his claims,[181] are not available in Italy.[182] Italian tort law is also less regimented than California tort law. Indeed, a plaintiff need not allege a specific theory of liability, but may merely assert a "right"

---

[175] *See Piper*, 454 U.S. at 239; *Lueck*, 236 F.3d at 1147.

[176] *See Lueck*, 236 F.3d at 1148 ("Where no such law [the Jones Act or FELA] is implicated, the choice of law determination is given much less deference on a forum non conveniens inquiry.").

[177] *See* 454 U.S. at 260.

[178] *See, e.g.*, *Ayco Farms*, 862 F.3d at 951; *Loya*, 583 F.3d at 665; *Lueck*, 236 F.3d at 1148 n.6.

[179] *See Insurance Co. of North Am. v. Federal Express Corp.*, 189 F.3d 914, 921 (9th Cir. 1999); *Hurtado v. Superior Court*, 11 Cal. 3d 574 (Cal. 1974).

[180] First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. *Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Second, if the laws differ, the court must determine whether a "true conflict" exists such that each of the relevant jurisdictions has an interest in having its law applied. *Id.* "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *Id.* However, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied." *Id.*

[181] *See* Am. Compl., at 62.

[182] *See* Caiazza Decl. ¶ 41.

---

- 23 -

and prove a violation of it.[183]

As discussed above in detail, California has little connection to this dispute. To the extent the State has any interest at all in seeing its law applied, such interest is limited to protecting citizens like Mr. Fabian who engage in international transactions identical those performed by thousands of other people all around the globe.

Italy, on the other hand, has a strong general interest in balancing deterrence of tortious conduct – like the negligence alleged by Mr. Fabian – from occurring within its borders against maintenance of a welcoming business environment.[184] And, as also discussed above, Italy has a profound interest in the BitGrail collapse specifically. Although the situs of the injury is no longer the sole consideration in California choice-of-law analysis, California courts have held that, "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."[185]

Thus, there is either a "false conflict" in the sense that California has no interest in seeing its law applied, or application of California law will more impair the interests of Italy than the application of Italian law will the interests of California because Italy's interest in having its law applied is so much stronger.

### *Burden on Local Courts and Juries*

Trying this case in this Court will require either fluency in Italian, or translators working in shifts. To the extent they can be convinced to attend, all of the witnesses on the issue of the BitGrail Defendants' liability will testify in Italian, and all related documents – if any can be secured – will be written in Italian. Additionally, if Italian law controls one or more of Mr. Fabian's claims, the court

---

[183] Caiazza Decl. ¶ 40.

[184] *Cf. Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 519 (N.D. Cal. 1980) ("[s]uch a choice of law would impair Yugoslavia's interest in deterring the tortious conduct of its residents within its borders."). The same can be said about Italy's interest in deterring false statements about economic activities occurring inside the country.

[185] *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (Cal. Ct. App. 1980); *see also McGhee v. Arabian American Oil Company*, 871 F.2d 1412, 1425 (9th Cir. 1989) ("It seems certain that Saudi Arabia has some legitimate interest in seeing that Saudi law determines the consequences of actions within its borders causing injury to people who reside there.").

- 24 -

will likely need to hear testimony from dueling experts of Italian law. If Italian law controls less than all of the claims the Court and the jury will need to distinguish between multiple bodies of law – a confusing task that helped justify dismissal in *Piper*.[186] All of this extra work will be in the service of a case that has essentially no connection to the Northern District of California, and which could have been – and once was in *Brola* – brought anywhere a BitGrail customer could be found.

The courts of Italy are better situated to address these matters. The judges there speak the language and know the law. They are also more familiar with Italian bankruptcy and criminal proceedings and will be able to weigh evidence of prosecutorial and judicial decisions in those cases more efficiently than any U.S. judge or jury.

*Court Congestion*

As of the release of the September, 2019 Federal Court Management Statistics, the Northern District of California has the 13th highest number of civil filings and the 11th highest number of pending cases per judge in the United States. The median time from filing to trial in civil cases is 22.8 months.[187] Civil litigation in Italy, in theory, has very tight timelines for completing pleadings and submitting final briefs after the court has taken all of the evidence.[188]

*Costs of Resolving a Dispute Unrelated to this Forum*

As amply explained above, the dispute is almost entirely unrelated to the forum, and, for the reasons set out in connection with the preceding two factors, the costs of resolving it here are large both in terms of the time that could be spent addressing other, local, litigation and the additional burden on court personnel and the jury managing foreign-language witnesses, documents, and applying foreign law. The case should be dismissed so that it can be refiled in the appropriate forum: Florence, Italy.

**CONCLUSION**

For the foregoing reasons the Court should dismiss the Amended Complaint in its entirety.

---

[186] *See Piper*, 454 U.S. at 260

[187] Weg. Decl., Ex. 1.

[188] *See Caiazza* Decl. ¶¶ 7, 9.

DEFENDANTS' MTD FOR FORUM NON CONVENIENS  Case No: 4:19-cv-54-YGR

Date: December 23, 2019

Respectfully submitted,

/s/ Peter Fox

Peter Fox
Peter Scoolidge
**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
*Attorneys for Defendants Hieusys, LLC, Colin LeMahieu, Troy Retzer, and Mica Busch*

/s/ Shawn Naunton

Shawn Naunton
**ZUCKERMAN SPAEDER LLP**
*Attorneys for Defendant Zack Shapiro*

/s/ Paul J Byrne

Paul J. Byrne
**CORNERSTONE LAW GROUP**
*Attorneys for Defendants Hieusys, LLC, Colin LeMahieu, Troy Retzer, Mica Busch, and Zack Shapiro*