**DECLARATION OF AVV. MASSIMO CAIAZZA**

**I, the undersigned, Massimo Caiazza, declare:**

**1.** My name is Massimo Caiazza. I am a lawyer admitted to practice law in court both in Italy (since 1990) and in Sweden (since 1996). I have made this declaration on the basis of my personal knowledge and professional experience. I am competent to form an opinion on the matters discussed below and I am ready to testify if required.

**2.** After completion of my studies at University of Trieste, faculty of law, I have practiced the legal profession since 1985 in Italy and at European level in Stockholm and London, dealing with international law and international litigation. I am founder and managing partner of Caiazza & Partners International Law Firm since 1996 and I am also admitted to defend before the Italian Supreme Court (Corte di Cassazione). A copy of my curriculum vitae, is attached as Exhibit A.

**3.** For the purpose of this declaration, I have reviewed the following material:

First amended class action complaint case no 19-cv-54-YGR, Order granting in part and denying in part defendants' motion to dismiss in case no 19-cv-54-YGR dated October 4, 2019, opinions of the Court of Florence, Bankruptcy Division dated January 21, 2019 (Decisions 17/2019 and 18/2019), and the *Piper Aircraft v. Reyno* opinion.

## Civil Trials

**4.** There are three levels of courts in Italy's civil judicial system: tribunals *(tribunali),* courts of appeal *(corti d'appello),* and the Supreme Court of Cassation *(Corte di Cassazione).* Tribunals and courts of appeal are organized geographically and cases must be filed in the tribunal and court of appeal, for the appropriate district. There are 135 tribunals and 29 courts of appeal. Cases before tribunals are usually heard by a single judge although a small category of cases are decided by a panel of three judges. Courts of appeals hear cases in panels of three judges. There is only one Supreme Court of Cassation for all of Italy, which hears cases in 5 judge panels or 9 judges (plenum). The Supreme Court of Cassation ensures that the law is properly applied, but it does not conduct an independent review of the facts in the merits of the case which is reserved to the lower instances. In addition, there are specialized courts with exclusive jurisdiction on matters relating to tax, the military, and administrative law. The Constitutional Court of Italy (*Corte Costituzionale della Repubblica Italiana)* has exclusive jurisdiction over constitutional issues (e.g. whether a law is unconstitutional).

**5.** Italy is a civil law system. The main sources of law are the Constitution and statutes or codes, including the regulations of the European Union. Judicial decisions are useful for their persuasiveness, but they are not binding and there is no official doctrine of *stare decisis.* In the field of civil litigation, the Code of Civil Procedure (CPC) and the Civil Code (CC) are the primary legal sources. The judiciary's autonomy and independence from the other branches of government is guaranteed by Article 104 of the Italian Constitution. Italian judges are appointed through competitive examinations (Art. 106, Italian Const.) and may not be removed from office except for limited circumstances (Art. 107, Italian Const.). The Italian Constitution guarantees due process of law before the courts and equal access to justice (Art. 24, 111, 113, Italian Const.).

**6.** Italian civil procedure follows the adversarial model (Art. 24, Italian Const.; Art. 101, 112, 115, CPC). The judge must rule only on the issues that are properly raised by the parties (Art. 112, CPC) and upon evidence submitted by the parties (Art. 115 CPC). Nevertheless, the judge also has extensive powers to take evidence



1

*ex officio* or upon request of a party (Art. 61, 115, 117, 118, 191, 210, 213, 240, 281 *ter,* CPC).

**7.** A lawsuit begins when the plaintiff files a complaint and serves a summons on the defendant (Art. 39, CPC). The complaint must set forth a detailed basis tor the plaintiff's claims and request for relief. The plaintiff also must select a date for the initial court appearance, which must occur not earlier than 90 days from service of summons, or 150 days if the summons must be served outside of Italy. The defendant must file a brief no later than 20 days before the initial court appearance. The brief must include any counter- or cross-claims, identify any third parties that must or may be joined, and include detailed defenses. At the first court appearance, the parties have an opportunity to amend their pleadings. Thereafter the parties may file a new brief further amending their pleadings, one brief submitting documentary evidence and requests for evidence and one brief for reply to counterparties' submissions concerning evidence. The complaint, answer, and any amended pleadings are all very specific documents and must lay out the parties' respective positions in detail and must be filed within specific terms.

**8.** The burden of the proof lies in principle on the party alleging a fact. Section 115 of the Code of Civil Procedure (as amended by Law No 69 of 2009) allows the court to consider facts to have been proven, regardless of the evidence submitted by the party making the claim, if they have not been specifically disputed by the appearing opposing party. Thus, by way of derogation from Section 2697 of the Civil Code, a fact may be deemed as proven if it is not promptly disputed. This rule does not apply in cases *in absentia:* if the defendant does not appear, the facts alleged by the applicant are not deemed to be 'undisputed', since said rule governing trials in absentia *'goes against the traditions of Italian procedural law, under which a party who fails to appear or makes a belated appearance has never been deemed to have made an implicit confession'* (Constitutional Court judgment No. 340 of 12 October 2007).

**9.** With the close of the pleadings period, the trial occurs primarily through written submissions and individual hearings in which the court receives testimony and evidence and hears arguments by legal counsel. When the pleadings phase is closed, the judge admits evidence (besides documents already lodged by the parties with their briefs) which he or she deems relevant and collects the evidence in one or more hearings, including expertise, if one or more issues of technical nature arise and are relevant for the judgment. Thereafter the parties are invited to draft their final conclusions. From that point, the parties have 60 days to submit final written briefs and 20 days to submit replies. The judge then has 30 days within which to issue a final written decision on the case (Art. 188-190, 281 *quinquies,* CPC). Under reforms implemented in 2009, the judge has discretion at the very outset of the case to set dates for evidentiary hearings and for the parties' presentation of final conclusions, the date of which implicitly controls the date when the parties must submit their final briefs and when the court must issue a decision (Art. 81 *bis of the provisions for the implementation of the* CPC).

**10.** The party that lost (totally or partially) the case, may file an appeal from the decision of the trial court. The court of appeals has plenary authority to review the trial court's decision on the law and facts. Following a decision by the court of appeals, a party may file an appeal to the Supreme Court of Cassation only on issues of law and procedure as set forth in Article 360 of the Code of Civil Procedure. A recent amendment to the Code of Civil Procedure (statute No. 134 of August 7, 2012), added new articles 348 *bis* and 348 *ter,* which introduced strict requirements for the admissibility of appeals from a judgment of first instance and states that *"the appeal shall be held inadmissible by the appeal judge when it does not have reasonable chances to be granted."* This amendment reduces the grounds for appeal. In practice such restriction is seldom applied.

**11.** The trial court's decision is immediately enforceable, even if a party files an appeal (Art. 282, CPC). This means that a defendant found liable for damages is required to make immediate payments to the plaintiff while an appeal is pending. There are limited circumstances when the immediate enforceability of a



judgment can be suspended (Art. 283, CPC: *"The appellate judge, upon motion filed by a party together with the main appeal or with the incidental appeal, when there are serious and well grounded reasons, also with reference to the possibility that one of the parties becomes insolvent, stays in whole or in part the enforceability or the execution of the challenged judgment, with or without a bond."*). However, the general rule is that the judgment is enforceable immediately even if there is an appeal and it is only in rare circumstances that the judgment is not given immediate effect. There also are several additional mechanisms that permit the trial court to order the defendant to make interim payments to the plaintiff. For example, upon proof of liability, a plaintiff may be entitled to an interim award of damages even before proving a specific quantum of damages (Art. 278, CPC). The judge also may order the defendant to make payments to the plaintiff after all evidence has been submitted but before a final decision is rendered (Art. 186 *quater,* CPC).

**12**. Any person may file a complaint in an Italian civil court without the need to post a bond or deposit. The only requirement is to pay a chancery charge, which varies according to the amount of the claim. Actually the highest charge for ordinary civil proceedings in first instance is Euro 1,686.

**13**. All parties in the proceedings need to be represented and defended by a lawyer admitted to bar. Lawyers are readily available in Italy for persons who wish to file a complaint, there are more than 250,000 lawyers admitted to bar in Italy. There are fees parameters established by decree of the Ministry of Justice DM 55/2014 depending on the value of the claim. Fees can however be negotiated in advance with the attorney.

## Production of evidence in civil trials in Italy

**14**. The parties are responsible for introducing evidence to support their claims and defences in the trial. Accordingly, the parties introduce most evidence as they attempt to carry their respective burdens of proof.

**15**. Italian civil courts order, either ex officio or upon request of the parties, witnesses to testify, exhibition of documents and inspection of things both from parties and non-parties alike. Upon application of a party, the court may issue an order that directs the opposing party to be heard and the party's declarations will be deemed relevant as evidence if it constitutes an admission (Art. 232, CPC). Separately, the court may engage in open-ended questioning of a party, called a "free interrogatory," to clarify facts (Art. 117, CPC). A party may also apply for an order that directs the opposing party to exhibit documents or other things, (Art. 210, CPC), and the court may draw an adverse inference against a party that refuses to testify or exhibit a document in response to a judicial order, or if the party appears but refuses to answer questions (Art. 116, CPC). Parties also may apply to the court for an order to any non-party to testify or to a third party, including public institutions or officials (e.g. prosecutor office, bankruptcy trustee) to exhibit documents or other things (Art. 244, 210, CPC). A non-party's failure to comply with a court order to testify is a crime (Art. 256, CPC) punishable by up to six months imprisonment or a fine (Art. 366, Penal Code). Finally, the judge may issue, ex officio, an order for the inspection or view of things (including inspection of persons if they are parties), subject to an adverse inference for a party's failure to comply or a fine for a non-party's failure to comply (Art. 116, 118, CPC).

**16**. The procedures to obtain a judicial order for testimony, exhibition of documents, or inspection of things are similar and all adhere to a rule of specificity. Under this rule, Italian civil courts will not order testimony, exhibition of documents, or inspection of things unless the request is specific. Italy does not allow the type of pretrial discovery favoured in the United States -"fishing expeditions"- and instead requires the parties to finely tune their requests. Consistent with the specificity principle, a request for testimony must identify by name the person whose testimony is sought and specifically indicate the facts on which the person is



expected to testify. (Art. 244, CPC). A request for testimony must also list out the questions that the requesting party would like the judge to ask the witness. Similarly, a request for exhibition of documents or inspection of persons or things must specifically identify the documents or material that is sought, explain its relevance, and make a *prima facie* showing of need and that the executing person possesses the documents or material. The subject of a request for testimony, exhibition, or inspection may file a brief objecting to the request including, for example, on the ground that the request is not sufficiently specific. The judge will then hold a hearing to discuss the requests and any objections with the parties. At the hearing, the judge can grant, deny or modify the requests to ensure compliance with the Code of Civil Procedure and rule of specificity.

**17.** The examination of witnesses is conducted by the judge and not by the parties. The judge will ask questions to the witness as posed by the parties in their briefs. Where necessary to clarify facts, the judge may pose his or her own questions. The direct cross-examination of witnesses by opposing parties is permitted in criminal proceedings, while in civil proceedings it depends on the judge if the attorneys are allowed to ask direct questions or through the judge. The testimony of a witness is recorded in the minutes of the hearing. (Art. 130, 207, CPC).

**18.** The court may appoint ex officio one or more experts (*Consulente Tecnico d'Ufficio* "C.T.U.") to assist the court in obtaining and/or studying evidence on technical matters (Art. 61, 191, CPC). The expert conducts its investigation in accordance with the adversarial principle. This implies that each party is entitled to appoint their own experts who can participate in the investigations and expertise and express their own opinions on the C.T.U.'s findings (Art. 201, CPC). Before submitting a technical report to the court, the C.T.U. is bound by law to submit a preliminary report to the parties (or to the party appointed experts) who are entitled to review the draft and make comments (Art. 195, CPC). The C.T.U. is bound by law to consider the remarks of the parties' experts and must respond to them in the final report. As part of the investigation, the C.T.U. may have access to any evidence submitted by the parties and may apply to the court for authorization to request further information from parties and non-parties. Depending on the specific mandate from the court, the C.T.U. may run experiments, conduct tests, and consult other experts.

**19.** In the absence of any legal prohibition, the judge may also use evidence gathered in a different proceeding between the same or also between other parties in order to draw not only facts about the existence or result of the other proceeding, but also to prove the specific facts addressed therein. Among the materials that may be considered are the reports of a criminal investigation or technical consultancy carried out in other trials (Supreme court decisions: Cass. 8585/1999; Cass. 15714/2010; Cass. 9843/2014).

**20.** Section 651 Italian Code of criminal procedure provides that a conviction following a trial has the effect of res judicata, concerning the existence of the elements of the crime and that the accused person committed the crime, in the civil trial or administrative proceeding for restitution brought against the convicted person and any potentially civilly liable person who has been sued or has intervened in the criminal trial. Notwithstanding the above, the civil judge can assess the possible participation of other subjects, for whom the criminal judgment is not binding.

**21.** Italian courts have several mechanisms for securing evidence that is located outside of Italy.

Italian civil courts can obtain evidence (such as the hearing of witnesses, the gathering of documents or onsite expert operations) easily in all member states of the European Union pursuant to Regulation EU 1206/2001 and in other countries (e.g. the United States) that are parties of the Hague Convention of March 18, 1970 on the taking of evidence abroad in civil or commercial matters (the "Hague Convention of 1970"). Under this Convention, the parties may apply for judicial orders of assistance for evidence or testimony through the



central authorities of the States Parties.

Regulation 1206/2001 enables an Italian judge to directly request from a judge of another Member State of the European Union, including the United Kingdom (excluding Denmark), that he/she take evidence in his/her jurisdiction. This can be done easily and rapidly with the European Judicial Atlas (which notably includes a directory with the addresses and telephone numbers of judges within the European judicial area). The requesting judge can directly contact the executing judge in order to solve any potential issue related to the interpretation or the enforcement of the request. The requesting judge may also participate in the enforcement of the request he/she filed. From a practical point of view, he/she carries out the investigation in the territory of the other Member State. This system of judge-to-judge communication, without using an intermediary, facilitates rapid resolution of possible difficulties and represents a great advantage with respect to the procedure, provided for by the Hague Convention of 1970.

Additionally, I understand that Section 1782 of Title 28 of the U.S. Code allows federal courts to order discovery to assist with foreign proceedings. Evidence collected through this mechanism would ordinarily be admissible in an Italian trial.

## Criminal Investigations and Trials

**22.** Criminal investigations are conducted in Italy by public prosecutors *(pubblico ministero)* who technically are members of the judiciary. Upon learning of a crime, public prosecutors are required to initiate a preliminary investigation to determine if there is sufficient evidence to support an indictment. During the preliminary investigation, the public prosecutor has wide ranging powers to seek any kind of evidence, *e.g.* to interview and take statements from witnesses and to collect and seize documents, files, objects and other properties. Normally, the public prosecutor has the power to act autonomously without leave of court. In a few limited circumstances, however, the prosecutor must obtain prior authorization or subsequent validation (*e.g.* wiretapping/eavesdropping, arrest or other measures restricting individuals' freedom or property rights) from the judge for the preliminary investigation. The public prosecutor also has authority to appoint technical experts who review and report on complex or technical matters. The public prosecutor is not bound by the same rule of specificity that applies to parties requesting evidence or testimony in civil proceedings. A person or entity that refuses to comply with the public prosecutor request to provide statements or evidence faces criminal sanctions and fines.

**23.** The judge for the preliminary investigation oversees the work of the public prosecutor and ensures compliance with all relevant laws and constitutional safeguards. In addition, the judge for the preliminary investigation has to ensure that investigations are completed within the term provided by the law (which varies depending on the crime's complexity) or may grant a term extension on the public prosecutor's request. If the public prosecutor finds that there is no basis for bringing the case to trial, the judge for the preliminary investigation may close the case. Finally, the judge for the preliminary investigation, on the public prosecutor's request, has authority to call for a Special Evidentiary Hearing, which is a special procedure aimed at preserving evidence for use in later stages of a criminal proceedings. If a Special Evidentiary Hearing is held, then the judge for the preliminary investigations may appoint technical experts who review and report on complex or technical matters.

**24.** In the case of evidence or persons located outside of Italy, the judge for the preliminary investigation can rely on certain provisions of the Code of Criminal Procedure (Art. 727 and following) and various treaties on judicial cooperation in criminal matters. There are a significant number of such conventions, including the Convention on Mutual Legal Assistance Between the European Union and the United States of America (Rome 2006). This treaty permits a public prosecutor to request another state to facilitate searches, the

5

seizure of material evidence, and the questioning of witnesses or experts. The judge for the preliminary investigation may also request, ex officio or on demand by any of the parties, that a foreign judicial authority carry out any investigation which is deemed useful for the case.

**25.** Once the preliminary investigation is complete, the public prosecutor decides whether to seek an indictment from the judge. If an indictment is obtained, then a trial judge (or a panel of judges depending on the circumstances) is appointed to oversee the trial. The public prosecutor has the burden to prove all the elements of the crime against the defendant. The standard of proof under Italian criminal law is "beyond any reasonable doubt." (Art. 533, Code of Criminal Procedure as amended in 2006) Cases are tried before the judge and either the prosecutor or the defendant can file an appeal.

**26.** All persons injured by a crime whose interests are directly protected by the Criminal Code are automatically deemed injured parties which status entitles the injured party to special rights of participation and access to evidence. During the preliminary investigation, injured parties may request that the public prosecutor obtain documents, interview witnesses, or conduct inspections. An injured party's lawyer also may conduct interviews with witnesses and he/she may designate an expert of its own to monitor and possibly challenge the work of any court-appointed experts. If the public prosecutor seeks and obtains an indictment, then all of the evidence collected during the preliminary investigation is presented to the court and is available to the defendant and injured parties (Art. 405, Code of Criminal Procedure). Prior to this stage, the evidence collected by the public prosecutor is kept secret.

**27.** If an indictment is issued, then the injured parties and other parties who have suffered a damage may elect to become civil parties in order to obtain restitution and damages. During the criminal trial, civil parties assisted by their attorneys have the same powers as the defendant to call and question witnesses, cross-examine witnesses, obtain evidence from third parties, and request appointment of technical experts. If the court finds that the defendant is guilty of any crime, civil parties are entitled to compensation for any damages caused by that crime. A criminal court can either decide for itself on the appropriate damages for each civil party or it can refer the matter to a civil court for the determination of damages. In the latter case, the criminal court has discretion to enter a provisional award of damages. However, the types of damages available to a civil party in a criminal trial are the same as the types of damages that would be available to the same party as a plaintiff in civil proceedings.

**28.** I understand that the Public Prosecutor of Florence has initiated an investigation against BitGrail defendant(s). Considering that the defendant has been declared bankrupt, any restitution awarded in case of conviction shall form the basis of a claim against the estates of the BitGrail defendants to be allowed or denied by the bankruptcy trustee who represents all damaged parties, and finally subject to the decision of the bankruptcy court.

**29.** Under Italian law, the pendency of a criminal proceeding does not require a stay of proceedings before a civil court hearing claims that also relate to the BitGrail events. Rather, a stay of civil proceedings is required only for civil plaintiffs that also decide to become civil parties to the criminal proceedings (Art. 75, Code of Criminal Procedure). Accordingly, a civil case brought against defendants related to conduct that is also the basis for an ongoing criminal would not be stayed despite that questions of fact would be resolved in two separate fora.

### Access to Italian evidence for use in U.S. proceedings

**30.** For several reasons, it may be difficult, time consuming, and expensive for parties involved in civil



proceedings in the United States to obtain access to evidence in Italy. Although Italy ratified the Hague Convention of 1970, it did so subject to a reservation of rights under Article 23 of Convention (Official Gazette, August 21, 1982, No. 230). Under this reservation, Italy stated that it will not execute letters of request issued for the purpose of obtaining pretrial discovery as known in common law countries, including the United States. Requests to Italian civil courts for assistance obtaining pretrial discovery for use in the United States will not be honoured.

**31.** The process for obtaining judicial assistance from an Italian civil court is notably limited by Article 69 of law 218/1995:

*3. The Court of appeals shall decide in chambers and, if the permission for the taking of evidence is granted, all relevant documents shall be forwarded to the competent court.*

*5. Italian law shall apply to the taking of evidence as to the form of preparatory acts. Nevertheless, the form expressly provided for by the foreign judicial authority shall be complied with in so far as this is not incompatible with the principles underlying Italian law.*

Under paragraph 3, a request for judicial assistance must go to an Italian court of appeals which will render a decision *"in chambers,"* meaning the court of appeals makes a decision on the request without holding a hearing on the matter. If the court of appeals grants the letter of request, then it will be sent to a judge of the tribunal for the place where the evidence is located to be executed. The decision of the court of appeals on a request for judicial assistance may be appealed by either party (Art. 739, CPC). Under paragraph 5, a request for judicial assistance to an Italian civil court must comply with Italian procedural requirements. Those procedures, which are identified in paragraphs 15-16 above, state that the requesting party must (1) identify the requested documents with specificity and make a *prima facie* showing that the executing party is in possession of the documents; (2) specify the questions to be asked of a specific witness; or (3) identify the persons or things to be inspected with sufficient specificity and make a showing of need and relevance. A request for assistance that does not comply with Italian law principles would have to be denied and cannot be modified by the court.

In my experience, even when allowed, the process for collecting evidence in Italy for use in a foreign proceeding takes much longer, than the process for collecting evidence from third-parties in Italian proceedings described above in Paragraph 15, which is also easier and less expensive.

## International jurisdiction of Italian courts

**32.** The jurisdiction of Italian civil courts is specified in the law no. 218/95. Article 3 states:
*1. Italian courts shall have jurisdiction when the defendant is domiciled or resides in Italy, or has a representative in this country who is enabled to appear in court pursuant to Article 77 of the Code of Civil Procedure, as well as in the other cases provided for by law.*

*2. Italian courts shall further have jurisdiction according to the criteria set forth in Sections 2, 3 and 4 of Title II of the Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters with Protocol, signed in Brussels on September 27, 1968, executed by Law of June 21, 1971, No. 804 ["the Brussels convention, with amendments in force for Italy, including when the defendant is not domiciled in the territory of a contracting State, with respect to any of the matters falling within the scope of application of the Convention. With regard to other matters, jurisdiction shall also be determined according to the criteria laid down for personal jurisdiction and venue.*

7

Reference to the Brussels Convention is now to be referred to EU Regulation No 1215/2012 of 12 December 2012 (*Brussels 1 bis*) and it applies also to any foreign country to determine the jurisdiction of Italian courts.

Anyone can sue in Italy as a plaintiff without regard to nationality.

Art. 7, point 2, of EU regulation No 1215/2012 states that defendants may be sued in a EU member state *"in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur".* Accordingly, an Italian court would have jurisdiction over claims against defendants not domiciled in Italy or in a Member State for events of tort that occurred in Italy.

This special jurisdiction criterion is based on the existence of a particularly close link between a given dispute and the courts of the place where the harmful event occurred, or is likely to occur, which justifies the attribution of jurisdiction to such courts, in order to grant a proper administration of justice and procedural economy.

In that context, taking account of the place where the damage occurred enables the particular court which is most appropriate to deal with the case to take jurisdiction, in particular on the grounds of proximity and ease of taking evidence (ECJ, Judgment of 16 July 2009, Case C-189/08, *Zuid-Chemie*).

The potential time and space gaps which may occur between the harmful event and its consequences may give rise to transnational controversies in which the plaintiff claims his/her right before his/her national courts, assuming that he/she had suffered damages in his/her country, while the defendant favours a restrictive interpretation of the criteria of the 'place where the harmful event occurred'.

The European Court of Justice (ECJ) clarified the meaning of 'place where the harmful event occurred', stating that the latter could refer both to the place where the damage occurred and to the place where the event generating the event occurred. However, this notion could not be extensively interpreted as to include any place where the harmful consequences of an event that already caused damage in another place could be 'felt'. Therefore, the place where the injured party claims to have suffered injury as a result of an 'initial damage' occurred in another State cannot be considered as the 'place where the harmful event occurred'.

In compliance with the ECJ principles, the Italian Supreme Court (Corte di Cassazione), by Judgment No. 27164/2018 dated 26 October 2018, stated that only the place where the causal event has directly produced its effects towards the immediate victim can be considered the 'place where the event occurred'. The Court of Cassation also clarified that, in case of tort, delict or quasi-delict, the 'place where the harmful event occurred' is the place where the causal event, generating the liability of a crime or an offence, produced its direct damages, regardless of the place where the victim may suffer future consequences. For the purposes of jurisdiction, the Italian Supreme Court attaches importance to the distinction between 'damage-event' and 'damage-consequence'. In view of the statement by the Italian Supreme Court, the place of the harmful event coincides both with the place where the action or omission took place and with the place of the initial damage, whereas the additional damage arising as an indirect consequence of the same action or omission is considered irrelevant.

Mr. Fabian's Claims for negligence, fraud, and negligent misrepresentation are also subject to Italian jurisdiction According to Art. 7 point 2) of EU regulation 1215/2012 concerning inter alia jurisdiction states that defendants may be sued in a EU member state *"in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur"* and that for those claims the Italian court is more appropriate as most of evidence is in Italy with major difficulties to obtain it in US due to restrictions provided by seizure, bankruptcy and pending criminal proceedings. Moreover, the place where



8

the harm occurred is the more appropriate venue for the case due to the location of the parties witnesses and evidence.

The European Court of Justice (ECJ) that is the highest instance for interpretation of European Regulations, ruled that "with regard to a claim concerning a tort of misrepresentation caused by publication of an allegedly defective prospectus relating to bearer bond certificates that can be acquired on a specific national secondary market and resulting in investment loss, the notion of the 'place where the harmful event occurred or may occur' in Article 5(3) of Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters shall be interpreted as being located in, and covering the entirety of, the territory of the Member State where those certificates could have been validly subscribed to, as well as the place where the secondary market investor, such as the Applicant, entered into a legally binding and enforceable obligation to invest on the basis of that prospectus." (ECJ Case C-304/17). If we apply this principle to the BitGrail case (having said that Regulation (EC) 44/2001 has been replaced by Regulation 1251/2012 without changes of that section), the misrepresentation is a claim in tort and the place of jurisdiction is where the Nano were traded, i.e. Italy.

**33.** An Italian civil court could also exercise jurisdiction over plaintiffs' claims upon agreement of the parties. Section 1 of Article 4, law 218/95 states: *"Where jurisdiction cannot be determined pursuant to Article 3, Italian courts shall nonetheless have jurisdiction if the parties have agreed to it and such agreement is evidenced in writing, or if the defendant enters an appearance without pleading the lack of jurisdiction in his first statement of defense."* Under Section 1, if the defendant or defendants enter an appearance without specifically contesting jurisdiction, then any objections to jurisdiction that might otherwise exist will be deemed to have been waived. The court under this circumstance is without authority to dismiss the action far lack of jurisdiction.

**34.** Finally, I believe that filing a motion to dismiss to Italy based on the *forum non conveniens* doctrine would be considered by an Italian civil court as a clear, implicit consent to jurisdiction in Italy.

**35.** If plaintiffs file claims in Italy, the case could be heard at the place of the BitGrail events (Florence). If multiple plaintiffs file their claims in tort relating to the BitGrail in different courts in Italy, the judges may order that the cases should be joined in a single proceeding and tried in front of the same judge (Art. 40, CPC).

## Italian bankruptcy law, effects on ongoing proceedings and on new proceedings

**36.** According to Italian law, the declaration of bankruptcy has, among its effects, that of depriving the debtor in bankruptcy of the standing to act or resist in court for any matter of economical content. This principle is established by Italian law (R.D. March 16, 1942, n. 267, art. 43, paragraph 1) stating that *"in disputes, including pending disputes, relating to patrimonial rights of the debtor in bankrupt only the bankruptcy trustee has standing"*[1]. The trustee may not, however, be named as a defendant in lieu of the debtor in

---

[1] This rule has been narrowly excepted by a well-established jurisprudence (most recently confirmed by Cass. n. 21765 of 2015 and by Cass. n. 10083 of 2017), which has given importance to the inertia or disinterest of the bankruptcy trustee in relation to certain relationships. And, in fact, the art. 43 of the bankruptcy law, is interpreted by the Court in the sense that the loss of the procedural capacity (standing) as a result of the declaration of bankruptcy is not absolute but relative to the mass of creditors, to whom only (and, for it, the trustee) it is allowed to plead, deriving from it the consequence that if the trustee remains passive and the debtor in bankruptcy acts in court on his own account, the counterparty is not entitled to propose the exception nor can the judge automatically dismiss the case due to lack of standing (see for example No. 3031 of 1978, Cassation No. 6371 of 1979, Cassation No. 1381 of 1987, Cassation No.

9

ordinary civil proceedings. The only remedy for against the debtor's estate is by filing a proof of claim in the bankruptcy proceeding. The reason why the debtor in bankruptcy cannot personally demand the fulfilment of obligations for which he is a creditor, nor to agree on fulfilment of those for which he owes, lies in the fact that the outcome of these judgments would affects the assets of the bankrupt, and therefore the formation of assets and the satisfaction of creditors admitted to the bankruptcy proceedings.

37. According to the public Italian register of enterprises, searching BitGrail S.R.L. it appears only BG Services S.r.l. The latter company shows that it was formed under the name BitGrail S.r.l. and it changed company name to BG Services S.r.l. on 12 March 2018. Furthermore, Webcoin Solutions was an individual firm of Mr. Francesco Firano. An individual firm is not subject to limited liability. Thus, according to Italian law, the natural person Francesco Firano is unlimitedly responsible for his individual firm's liabilities with all his assets. Due to the status of bankruptcy, BitGrail Defendants cannot be sued through any ordinary civil proceedings in any country. A claimant is only entitled to lodge proof of his/her claim in the bankruptcy proceedings and, if totally or partially rejected, can oppose such decision in court filing a lawsuit which is "sub-proceedings" belonging to the bankruptcy proceedings (B.L. Art. 99 R.D. 16 march 1942, n. 267). This kind of trial is a simplified procedure compared to an ordinary lawsuit.

38. Should Mr. Francesco Firano also be subject to criminal proceedings, then the bankruptcy trustee will be entitled to claim damages on behalf of all creditors. According to Italian law, it would be possible for individual creditors to intervene with a claim in the criminal trial only for "moral damages" (e.g. suffering and other non-patrimonial indemnifications which are different from economical losses).

## Italian Substantive Law

39. Plaintiffs in this case seek damages for injuries they allegedly sustained on a variety of grounds. Most notably are Articles 2043 and 2056 of the Civil Code:

*"2043. Compensation for unlawful acts. Any fraudulent, malicious, or negligent act that causes an unjustified injury to another obliges the person who has committed the act to pay damages."*

*"2056. Measure of damages. The damages owed to the person injured shall be determined in accordance with the provisions of Articles 1223, 1226, and 1227. The damages arising from loss of earnings shall be equitably estimated by the court according to the circumstances of the case."*

Article 1223 of the Civil Code, referred to in Article 2056, extends to liability in tort the same compensation for damages as for contractual liability, i.e. direct losses sustained as well as any lost profits. Taken together, if plaintiffs were to prove defendants were negligent, then these provisions would entitle plaintiffs who prove losses from the alleged wrongdoings to recover for those losses regardless of whether their origin is in contract or tort.

40. Under Italian law, plaintiffs do not need to plead a specific theory of liability nor label their claims: any

---

3400 of 1997; Cassation No. 4865 of 1998; Cassation No. 7132 of 1998; Court of Cassation n. 5238 of 1999; Cassation No. 12879 of 1999; Cassation No. 6085 of 2001). However, it was further specified in jurisprudence that the lack of standing may be objected by anyone and is detectable ex officio, when the debtor bankruptcy intends to protect, directly and personally, assets and relationships already acquired in the bankruptcy, on which the bankruptcy trustee has actually shown interest (see, for example, Cassation No. 464 of 1972; Cassation No. 7200 of 1998; Cassation No. 8116 of 2000; Cassation No. 5202 of 2003). This exception applies when the debtor seeks to act as a plaintiff to recover money owed to the estate.

10

"right" or "legitimate interest" acknowledged expressly or implicitly by rule of law will be protected by the courts (Art. 24, Italian Const.). Rather, plaintiffs need only to allege relevant and material facts. The judge, based on the facts alleged and damages claimed, will then decide the specific type of liability at issue.

**41.** Quantity of damages are governed by articles 1223 to 1226 of the Italian Civil Code (applicable to any type of liability) and articles 2056 to 2059 (applying to tort liability). The basic principle of damages under Italian law is that plaintiffs should be placed in the same position they had before they were injured. To accomplish this result, there are two types of damages available to injured persons: (1) pecuniary, and (2) non-pecuniary damages. Pecuniary damages provide compensation for loss of or damage to property, lost earnings, and other out-of-pocket losses. Non-pecuniary damages provide compensation for biological, existential, and moral injuries. Among other things, non-pecuniary damages can cover damage to relations with friends and family, as well as pain and suffering. The types of damages available do not depend on the substantive basis for liability. Judges have discretion to award non-pecuniary damages but are guided by tables issued by the Courts of Milan (for the entire country). The restrictive provision of Article 2059, whereby "non-patrimonial damages shall be awarded only in cases provided by law" (i.e.: only in case of criminal liability: Article 185 Italian Penal Code) is no longer effective, according to the Italian Constitutional Court (notably, judgment No. 233/2003). And according to the Corte di Cassazione (notably judgment No. 26972/2008) the same principles apply both to contractual and tort liability. However, the plaintiff has the burden of proving the existence and, for pecuniary damages, the amount of damages for which compensation is sought. Under Article 1226 of the Civil Code, if the plaintiff proves liability but is unable to prove damages with reasonable certainty, then the judge has discretion to liquidate the plaintiff's damages on an equitable basis. Plaintiffs also might claim under Article 123 of the so-called Consumer's Code (Law no. 206/2005) for product liability and professional negligence claims.

Italy does not acknowledge punitive damages.

**42.** According to Italian law, statutes of limitations are five years for tort claims (Art. 2947, CC) unless the tort constitutes also a crime, whereby the statute of limitation for the crime will prevail (e.g. 10 years). Plaintiffs can prevent the time bar of claims by serving defendants a written notice of their claim, in which case a new limitation period starts to run. Plaintiffs can then continue to prevent a time bar by serving further notice of claims, each of which will start a new limitations period. Thus, the plaintiffs can effectively prevent the statute of limitations from ever running. The plaintiffs' filing of a lawsuit in the United States constitutes such written notice even if those proceedings are eventually dismissed. Finally, defendants also have the ability to waive the statute of limitations and Italian civil judges lack authority to enforce the statute of limitations ex officio (the counterparty must raise such an objection in the first brief of defence).

**43.** Article 103 of the Code of Civil Procedure states, *"More parties may file the same action or be defendants in the same proceeding, where the actions involving them are related by reason of their object, or the title at the basis of the actions, or where the final judgment depends, completely or partially, on the solution of the same issues."* There is no limit under Article 103 to the number of plaintiffs that may join together in a single complaint. Under Article 103, plaintiffs in a lawsuit would also be able to join together to file a single complaint in Italy. In addition, if some plaintiffs initially file a lawsuit on their own in Italy asserting claims for damages arising out of the BitGrail events, additional parties may intervene and join the lawsuit to assert similar claims against the same defendant or defendants (Art. 105, 267,CPC).

**44.** As international lawyer, many of my clients are not Italian and our law firm assists them in litigation before Italian Courts. It is my personal experience in over 35 years of practice that Italian courts do not favor Italian parties and that they are neutral and fair independently of the origin of each party. Just to confirm this statement, it can be noted that foreign plaintiffs sued BitGrail defendants in the bankruptcy court in Florence and won all cases in all instances in spite of BitGrail defendants' defensive arguments.



11

In the light of the considerations above, it is my opinion that:

a. Italian judges are independent, fair, and impartial and that all plaintiffs in Italian proceedings are guaranteed due process of law and equal access to the courts.

b. Italian civil courts would have jurisdiction over claims filed in Italy by plaintiffs in connection with the BitGrail events against any or all of the defendants.

c. The BitGrail defendants declared bankrupt by the court of Florence do not have standing to be sued before any court as only the bankruptcy trustee is legitimated to represent their interest. This assumption includes the pending lawsuit in the U.S. with the consequence that a judgment would not be enforceable in Italy and, if acknowledged, it would only be a ground for an application lodging proof of their claim in the bankruptcy.

d. The only actions that can be brought by the plaintiffs against the BitGrail defendants consist in lodging proof of their claim in the bankruptcy proceeding, which is still possible as the hearings for both proceedings are scheduled in 2020. Delayed applications will also be considered after that term and, if founded, accepted by way of admission of the claim in the bankruptcy proceedings.

e. The statute of limitations would not bar plaintiffs from filing their claims in Italy following a dismissal from the United States because the limitations period has not yet run.

f. Civil judges in Italy have a wide variety of mechanisms to obtain testimony, documents, or other evidence from parties and non-parties in Italy and elsewhere.

g. There is nothing in Italian law that would prohibit parties in Italian civil proceedings from using evidence obtained in the United States using discovery procedures available in the United States.

h. Substantive Italian law provides remedies for the claims plaintiffs have asserted in the United States concerning negligence, fraud and misrepresentation. If plaintiffs prove their claims in the merits, an Italian civil court can also award compensation for damages to ensure that plaintiffs are fully compensated for their losses.

i. Italian court is certainly *forum conveniens* as all or most of evidence concerning BitGrail events is placed in Italy: the seized computer used for the alleged double transactions, the bookkeeping of BitGrail, the witnesses working for BitGrail or assisting BitGrail in their business activity, the documents, files, software examined by the CTU (court appointed expert) and the party appointed experts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Milan, Italy, on December 23, 2019.

Massimo Caiazza

12

# Exhibit A

# CAIAZZA & PARTNERS
### INTERNATIONAL LAW-FIRM

**Avv. Massimo Caiazza\***
avvocato in Milano e Stoccolma
ledamot av Sveriges Advokatsamfund

**Avv. Massimo Saporiti\***

**Avv. Carlo Pratesi\***

**Avv. Luca Rubini**
avvocato in Milano e Londra

**Avv. Mauro Miranda**
LLM College of Europe (Bruges)

**Avv. Giacomo Maria Cremonesi**

**Avv. Alessandro Saracco**

# MASSIMO CAIAZZA
Born in Feltre (BL) Italy 1961

---

## EDUCATION

---

| | |
|---|---|
| 2018 | **Data Protection Officer**<br>Milan, Italy |
| 1985 | **Doctor of law**<br>University of Trieste, Italy |
| 1979<br>Van Nuys, CA | **U.S. Grant High School Diploma** |

---

## LEGAL EXPERIENCE & ACHIEVEMENTS

---

**Legal professional practice as trainee/junior counsel**

| | |
|---|---|
| 1985 | Udine |
| 1986 | Stockholm |
| 1987 | London |

**Professional Legal Experience**

| | |
|---|---|
| 1988 | Started own legal practice in Milan |
| 1990 | Admitted to Bar in Milan |
| 1996 | Admitted to the Swedish Bar Association and became the first foreign lawyer called to the Bar in Sweden.<br><br>Founded Caiazza & Partners International Law firm, Milan |
| 2002 | Admitted to defence before the Supreme Court of Rome |
| 1997-2007 | Member of the Council of Swedish Bar Association, foreign section |
| 2005-2006 | Member of the National Council of the Swedish Bar Association |
| Present | Board member of Italian-Swedish chamber of commerce<br>Fiduciary lawyer of Italian embassy in Sweden<br>Fiduciary lawyer of Swedish embassy in Italy<br>Owner, Founder and Partner of Caiazza & Partners International Law firm |

\* Partner

---

**STUDIO LEGALE ASSOCIATO**
CORSO VERCELLI 57, 20144 MILANO - ITALY      TEL. +39-02860968   FAX +39-0286465445
Local Office: Parco Scientifico Tecnologico Kilometro Rosso, Palazzo delle Professioni, 24100 BERGAMO - ITALY
caiazza@studiocaiazza.com - www.studiocaiazza.com

## CAIAZZA & PARTNERS
INTERNATIONAL LAW - FIRM

Keynote speaker and panelist in national and international conferences

---
### AREAS OF EXPERTISE
---

Contract Law (International, Italian and Swedish)
Corporate Law
International litigation
International arbitration
ICT Law
Data Protection, Data Protection Officer (DPO) for corporations

---
### CLIENTS
---

Corporations listed in the stock exchange
Italian and Swedish industries
Private equity funds
Privately owned companies
ICT enterprises
Software houses
Public institutions

Milan, 11 December 2019

Massimo Caiazza

2