**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**JAMES FABIAN,**

       Plaintiff,

     vs.

**COLIN LEMAHIEU, ET. AL.,**

       Defendants.

CASE NO. 4:19-cv-00054-YGR

**ORDER: (1) GRANTING MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE; (2) GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AFFIRMATIVE DEFENSES RAISED IN THE ANSWER; (3) DENYING MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

Re: Dkt. Nos. 81, 84, 85

Plaintiff James Fabian brings this putative class action against defendants Nano f/k/a/ RaiBlocks f/k/a Hieusys, LLC ("Nano"), Colin LeMahieu, Mica Busch, Zack Shapiro, and Troy Retzer (collectively, "Nano Defendants") as well as B.G. Services SRL f/k/a BitGrail SRL f/k/a Webcoin Solutions ("BitGrail") and Francesco "The Bomber" Firano (collectively "BitGrail Defendants")[1] for securities fraud and related claims in connection with defendants' promotion of and statements regarding a cryptocurrency or digital asset referred to as NANO f/k/a RaiBlocks ("XRB" or "Nano Tokens"). (Dkt. No. 58 ("FAC") at 1.)

Now before the Court are the following motions: (1) Fabian's motion for leave to effect alternative service (Dkt. No. 81); (2) Fabian's motion to strike affirmative defenses raised in the Nano Defendants' answer (Dkt. No. 84); and (3) the Nano Defendants' motion to dismiss for *forum non conveniens.* (Dkt. No. 85.)

Having carefully reviewed the record, the papers submitted on each motion, and for the reasons set forth more fully below, the Court **HEREBY ORDERS** as follows: (1) motion for leave to effect alternative service is **GRANTED**; (2) the motion to strike affirmative defenses raised in Nano Defendants' answer is **GRANTED IN PART** and **DENIED IN PART**; and (3) the motion to dismiss for *forum non conveniens* is **DENIED**.

United States District Court
Northern District of California

# I.    RELEVANT BACKGROUND

In order to expedite the issuance of this Order, the Court incorporates the factual and procedural background from the prior order granting in part and denying in part the motion to dismiss.  (Dkt. No. 66 at 2-11.)[1]  The Court only summarizes the relevant background since the issuance of the prior order.  Thus:

In response to the Court's prior orders, the Nano Defendants filed their answer on October 25, 2019.  (Dkt. No. 70.)  In the answer, the Nano Defendants raise ten affirmative defenses.  (*Id.*)

The Court and the parties conferred for a case management conference on November 18, 2019, where the parties indicated their intention to bring the now pending motions.  (Dkt. No. 80.)  Upon the completion of the parties' briefing, the Court vacated the motion hearings, (Dkt. Nos. 89, 99) deciding that the motions were appropriate for resolution without oral argument.  *See Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

# II.    MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE

## A.    Legal Standard

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3). Similarly, Rule 4(h)(2) permits service of a corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).

It is left "to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)."  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir.2002).   Service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief."  *Id.* at 1015. To the contrary, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or

---

[1]  *See also Fabian v. LeMahieu*, 4:19-cv-00054-YGR, 2019 WL 4918431, at *2-7 (N.D. Cal. Oct. 4, 2019).

Rule 4(f)(2)" and "the advisory notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means." *Id*. To satisfy constitutional norms of due process, the alternative method of service must be "reasonably calculated, under all the circumstances, to apprise the interested parties of the action and afford them an opportunity to present their objections." *Id*. at 1016. In other words, "'service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text.'" *Id*. at 1014. In applying Rule 4(f)(3), "trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id*. at 1016 (collecting cases).

**B.      Analysis**

Fabian requests service on the BitGrail Defendants, Firano's counsel, and the BitGrail Defendants' bankruptcy trustee via mail, email, and social media. The Court addresses the three issues raised by Fabian, namely that: (1) service on the BitGrail Defendants' bankruptcy trustee and Firano's counsel in Italy – in addition to service on the BitGrail Defendants themselves – is appropriate; (2) the proposed methods of service – by mail, by electronic mail, and social media – are not prohibited by international agreement; and (3) the proposed methods of alternative service are reasonably calculated to provide the BitGrail Defendants with notice of this action and afford them the opportunity to present their objections to the charges against them. The Nano Defendants filed no response to this motion.    The Court addresses each of these three arguments in turn below.

*1.      Additional Service on the Bankruptcy Trustee and Counsel.*

Based on a review of the record, the Court concludes that additional service on the BitGrail's bankruptcy trustee and Firano's counsel in Italy is appropriate in this matter. As the record demonstrates, Firano's counsel in Italy, Francesco Ballati, remains in contact with Firano. (*See generally* Dkt. No. 81-5.) Moreover, Ballati's response – that communications about this action should be sent to the bankruptcy trustee – indicates that service upon the bankruptcy trustee is appropriate. (*Id*.) "[T]rial courts have authorized a wide variety of alternative methods of

3

service including . . . delivery to the defendant's attorney." *Rio Props.*, 284 F.3d at 1016.  Indeed, "courts around the country have found that service upon a foreign defendant through counsel is appropriate to prevent further delays in litigation." *Knit With v. Knitting Fever*, Inc., No. 08-cv-4221 (RLB), 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010) (collecting cases).

Thus, service on the BitGrail Defendants by providing the service documents to Ballati and the Bankruptcy Trustees and requesting that the documents be forwarded to Firano is appropriate.

> 2. *Proposed Methods of Service Are Not Prohibited by International Agreement*

Here, the Court concludes that service via mail, electronic mail, and social media are appropriate. First, it is well established that service by mail to Italian based parties is appropriate. "Both the Ninth Circuit and California courts have held that Article 10(a) of the Hague Convention allows service of process by mail, so long as the country in which service is being effected does not object." *Bondanelli v. Ocean Park SRL*, No. CV 12-07724 GAF (SSx), 2013 WL 12139129, at *1 (C.D. Cal. Oct. 7, 2013) (citing *Brockmeyer v. May*, 383 F.3d 798, 801–02 (9th Cir. 2004)).  "Italy has not objected" to Article 10(a).  *Bondanelli*, 2013 WL 12139129, at *1. Moreover, Italy explicitly permits service of process by mail.  *See* United States Department of State, Judicial Assistance Country Information: Italy (last updated Nov. 15, 2013).  In light of the foregoing, numerous other courts have found service of process by mail to be accepted in Italy. *See Bondanelli*, 2013 WL 12139129, at *1 (collecting cases).

As to authorization of service in this jurisdiction, "the determination of whether Plaintiff properly served the Summons and Complaint will be made applying the California Code of Civil Procedure." *Id*. at *2.  These requirements include mailing via first-class mail or airmail, postage prepaid, requiring or requesting a return receipt.  *See* Cal. Code Civ. Proc. § 415.40.  Thus, with regard to service by mail, the Court finds that service is not prohibited by international agreement.

Second, with regards to service via electronic mail and social media, courts have found such service not prohibited by international agreement and have approved of such service in the court's discretion.  "[T]rial courts have authorized a wide variety of alternative methods of service including . . . email." *Rio Properties, Inc.*, 284 F.3d at 1018 (citations omitted).  And courts in this

United States District Court
Northern District of California

district have authorized service of process by social media.  *See, e.g.*, *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240 (LB), 2016 WL 5725002, at *2 (N.D. Cal. Sep. 30, 2016) (discussing decision to grant "service by email, Facebook, and LinkedIn because notice through these accounts was reasonably calculated to notify the defendant of the pendency of the action and was not prohibited by international agreement"); *UBS Fin. Servs. v. Berger*, No. 13-cv-03770 (LB), 2014 WL 12643321, at *2 (N.D. Cal. Apr. 24, 2014) (recounting court's decision to authorize service via defendant's "gmail address and through LinkedIn's 'InMail' feature"); *Tatung Co. v. Shu Tze Hsu*, SA CV 13-1743-DOC (ANx), 2015 WL 11089492, at *2 (C.D. Cal. May 18, 2015) ("Courts routinely authorize email service under Rule 4(f)(3)") (citing cases). Here, the Court concludes that neither service method is prohibited by international agreement. Moreover, the Court exercises its discretion to permit such methods of service in this matter. Thus, the court finds that service by email and social media – coupled with service by mail – are appropriate here and are not prohibited by international agreement.

3. *Proposed Methods of Service Are Reasonably Calculated to Provide the BitGrail Defendants with Notice of this Action*

Finally, the Court concludes that the proposed methods of service are reasonably calculated to provide the BitGrail defendants with notice of this action.  Rule 4 is "flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial WorkersUnion v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).  Here, in light of the facts that: service is being made personally on Firano, that Ballati confirmed in October 2019 that he continues to represent Firano, that Ballati indicated that documents regarding this action should be forwarded to the bankruptcy trustee, and that service is being made on the BitGrail Defendants via several methods, the Court concludes that, under the circumstances, the methods are reasonably calculated to provide notice to the BitGrail defendants and afford them an opportunity to present their objections.

Accordingly, in light of the foregoing analysis, the Court **GRANTS** the motion for leave to effect alternative service as requested in the motion.

United States District Court
Northern District of California

### III.   MOTION TO STRIKE AFFIRMATIVE DEFENSES RAISED IN THE ANSWER

#### A.   Legal Standards

Rule 12(f) allows a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading.  A court may grant a motion to strike where "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *5 (N.D. Cal. Jan. 4, 2018).  The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sydney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Further, because Rule 12(f) motions are disfavored, "courts often require a showing of prejudice by the moving party before granting the requested relief." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).  "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).  It is within the sound discretion of the district court whether to grant a motion to strike. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10-CV-00168-LHK, 2010 WL 3749284, at *1 (N.D. Cal. Sept. 23, 2010) (quoting *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir.1979)).  "What constitutes fair notice depends on the particular defense in question." *G &G*, 2010 WL 3749284, at *1 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381, at 410 (3d ed.2004)).  "While a defense need not include extensive factual allegations in order to give fair notice . . . bare statements reciting mere legal conclusions may not be sufficient." *G &G*, 2010 WL 3749284, at *1 (internal citations omitted).  "Because motions to strike a defense as insufficient are disfavored,

1   they 'will not be granted if the insufficiency of the defense is not clearly apparent.'" *Id.* (quoting

2   5C Wright & Miller § 1381, at 428).

3   **B.   Analysis**

4   Fabian moves to strike ***all*** of the affirmative defenses raised in the Nano Defendants'

5   answer, including the reservation to add further affirmative defenses.  Given the breadth of the

6   motion, the Court considered sanctioning Fabian for the filing of a frivolous motion which did not

7   meet the basic standards of such a disfavored motion.  Not surprisingly, the Nano Defendants

8   oppose the request to strike the defenses.  Fabian is **hereby warned** that the Court will deal with

9   any such similar filings in the future summarily and **may *sua sponte*** inquire on the

10  appropriateness of **sanctions**.  Counsel should know better than to overburden courts without

11  cause.  All of this could have been easily accomplished through written discovery.  Similarly, the

12  Nano Defendants should not haphazardly include affirmative defenses without a legitimate legal

13  basis.

14  The Court addresses each ground in turn below.  Thus:

15  First Affirmative Defense: Failure to State a Claim.  **GRANTED**.  "Failure to state a claim is

16  not a proper affirmative defense but, rather, asserts a defect in [plaintiff's] prima facie case."

17  *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D.

18  Cal. 2010).  *See also id.* ("[D]espite its inclusion in Civil Form 30, failure to state a claim under

19  Rule 12(b)(6) is more properly brought as a motion and not an affirmative defense."); *G &G*, 2010

20  WL 3749284, at *1 ("The following affirmative defenses are merely denials of the allegations and

21  claims set forth in the Complaint: . . . failure to state a claim[.]").  Moreover, the Court notes that

22  it has now dealt with two prior motions to dismiss from the Nano Defendants and have addressed

23  similar arguments regarding Fabian's failure to state a claim.  (*See* Dkt. Nos. 56, 66.)  Thus, this

24  affirmative defense is appropriately stricken but was quite unnecessary for purposes of a motion.

25  Second Affirmative Defense: Contributory Negligence/Comparative Fault.  **DENIED**.  At

26  this stage, prior to discovery, such a defense is appropriately maintained.  This is so where the

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Court has made no formal holding as the choice of law in this class action.[2]  Moreover, the Court

2    concludes that while the factual details in the answer are scant, such details are sufficient where

3    the lack of greater detail can be remedied through the formal discovery process.   *See Figueroa v.*

4    *Baja Fresh Westlake Vill., Inc.,* No. 12-cv-769-GHK-SPX, 2012 WL 2373254, at *2 (C.D. Cal.

5    May 24, 2012*)* ("[P]laintiff's Motion is DENIED inasmuch as it relies on the factual insufficiency

6    of the defenses asserted."); *see also Diaz v. Alternative Recovery Mgmt.,* No. 12-cv- 1742-MMA-

7    BGS, 2013 WL 1942198, at *2 (S.D. Cal. May 8, 2013) ("Any lack of factual detail in these

8    defenses may be remedied through the formal discovery process, as is done in the vast majority of

9    cases.").  Thus, the Court declines to strike this affirmative defense.

10            Third Affirmative Defense: Failure to Mitigate. **DENIED**.  Courts routinely permit parties to

11    plead a failure to mitigate defense without specific factual allegations prior to the conclusion of

12    discovery.  *See Bd. Of Trs. Of San Diego Elec. Pension Trust v. Bigley, Elec., Inc.,* No. 07–cv–

13    634–IEG (LSP), 2007 WL 2070355, at *3 (S.D. Cal. July 12, 2007) (collecting cases) ("A handful

14    of courts have been confronted with the issue of whether a defendant's mere allegation that

15    'plaintiff failed to mitigate damages' is sufficient under the pleading requirements of Rule 8.

16    These courts have typically held that a generalized statement, such as the one used in the instant

17    case, meets defendant's pleading burden with respect to the affirmative defense of damage

18    mitigation."); *accord Nomadix, Inc. v. Guest-Tek Interactive Entm't LTD.,* No. 2:16-CV-08033,

19    2017 WL 7275391, at *7 (C.D. Cal. Nov. 30, 2017); *Horton v. NeoStrata Co. Inc.,* No. 3:16-cv-

20    02189-AJB-JLB, 2017 WL 2721977, at *12 (S.D. Cal. June 22, 2017) ("The Court finds that this

21    same analysis applies . . . . Thus, as the discovery cut-off date is set for February 6, 2018, the

22    Court cannot say at this juncture that other facts may not come to light later down the road. Thus,

23    Plaintiffs' motion to strike 24 Seven Defendants' sixth [unclean hands], eighteenth [failure to

24    mitigate], nineteenth [contribution by Plaintiffs' own acts], and twenty-first [willfulness]

25    affirmative defenses is DENIED."); *Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.,* No.

26    2:15-cv-00861-KJM, 2015 WL 5436784, at *13 (E.D. Cal. Sept. 15, 2015); *Ganley v. Cty. of San*

27    _____

28        [2]  The Court highlights that the Nano Defendants concede that, should California law apply
to this class action, such a defense is not recognized under California law.

United States District Court
Northern District of California

*Mateo,* No. 3:06-CV-03923, 2007 WL 902551, at *6 (N.D. Cal. Mar. 22, 2007) ("Although no case law from this district or circuit is available, several courts have held that 'where discovery has barely begun, the failure to mitigate defense is sufficiently pled without additional facts.' . . . . This reasoning is persuasive here because discovery has just begun, Plaintiff has been put on notice of the defense, and the possibility remains that additional facts may be alleged that would support the affirmative defense of mitigation. Therefore, the defense may be supported by additional, as of yet undiscovered facts, and will not be stricken."). Thus, the Court declines to strike this affirmative defense.

Fourth Affirmative Defense: Assumption of Risks. **DENIED**. While the Court concluded that Fabian alleged sufficient facts to state a claim, including that the Nano Defendants owed a duty to Fabian, there has been no merits determination on this issue. Fabian otherwise provides no basis for the striking of this affirmative defense. Thus, the Court declines to strike this affirmative defense.

Fifth Affirmative Defense: Set-Off. **DENIED**. Although the allegations in the answer are bare, the Court finds that they sufficiently plead sufficient facts as to any "set-off" affirmative defense. Thus, the Court declines to strike this affirmative defense.

Sixth Affirmative Defense: Apportionment. **DENIED**. As the Nano Defendants point out, courts in this district note that apportionment is applicable in negligence and intentional tort actions. *See Izett v. Crown Asset Mgmt., LLC,* No. 18-cv-05224-EMC, 2018 WL 6592442, at *3 (N.D. Cal. Dec. 14, 2018) ("Courts have held that affirmative defenses like apportionment and equitable indemnity 'while applicable in negligence and intentional tort actions, have no relation to . . . FDCPA or RFDCPA claims' like those asserted in Plaintiff's complaint."); *Perez v. Gordon & Wong Law Grp., P.C.,* No. 11-cv-03323-LHK, 2012 WL 1029425, at *11 (N.D. Cal. Mar. 26, 2012) ("Finally, the Court concludes that Defendants' ninth (apportionment) and eleventh (equitable indemnity) affirmative defenses, while applicable in negligence and intentional tort actions, have no relation to the FDCPA or RFDCPA claims asserted in Plaintiff's Complaint."). Thus, the Court declines to strike this affirmative defense.

Seventh Affirmative Defense: Current Law Prohibits Plaintiff's Claims. **GRANTED**. This affirmative defense appears to be another way of stating that Fabian has failed to state a claim. *See, e.g.*, *Minns v. Advanced Clinical Emp't Staffing, LLC.*, No. 13–cv–03249–SI, 2014 WL 5826984, at \*3 (N.D. Cal. Nov. 10, 2014) (striking multiple affirmative defenses as "not proper affirmative defense" after concluding that each were "just different ways of saying that plaintiffs have failed to state a claim for relief"). The Court has already concluded that such a defense is not technically an affirmative defense. Moreover, while the Nano Defendants aver that the Italian bankruptcy proceedings may prohibit Fabian's claims, they fail to elaborate on how such proceedings would impact the claims here. Thus, this affirmative defense is appropriately stricken.

Eighth Affirmative Defense: Laches. **DENIED**. Although the allegations in the answer are bare, the Court finds that they sufficiently put Fabian on notice of the "laches" affirmative defense. Thus, the Court declines to strike this affirmative defense.

Ninth Affirmative Defense: Supervening Cause. **GRANTED**. The Court concludes that the "supervening cause" affirmative defense lacks sufficient allegations to place Fabian on notice. *See, e.g.*, *J & J Sports Prods. v. Mendoza-Govan*, No. C 10-05123 WHA, 2011 WL 1544886, at \*4 (N.D. Cal. Apr. 25, 2011) ("Defendant does not indicate who, besides defendant, may have caused plaintiff's damages. In addition, she does not indicate what conduct by plaintiff or third parties allegedly caused the damages.") (citing *G &G*, 2010 WL 3749284, at \*2 (finding the defense of "superseding acts of third persons" to be insufficiently pled because the defendants did not identify any superseding acts of third persons)). Thus, this affirmative defense is appropriately stricken.

Tenth Affirmative Defense: Indemnification / Innocence. **GRANTED**. First, as Fabian highlights, "Indemnification is not an affirmative defense, 'but rather a claim that must be pleaded and proved.'" *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10-CV-05718, 2011 WL 6293922, at \*3 (N.D. Cal. Dec. 15, 2011) (quoting *J & J Sports Prods. v. Vizcarra*, No. 11-1151 SC, 2011 WL 4501318, at \*3 (N.D. Cal, Sep. 27, 2011) ("If Defendants believe they are entitled to indemnification by Direct TV, then they must bring an action against Direct TV. Accordingly,

the Court strikes Defendants' second and fifth affirmative defenses with prejudice.")).  Second, the Court cannot otherwise determine how an "innocence" affirmative defense is anything other than a general denial defense.  The Nano Defendants fail to provide any authority demonstrating the appropriateness of this affirmative defense.  Thus, this affirmative defense is appropriately stricken.

<u>Additional Affirmative Defense: Reservation to Add Affirmative Defenses</u>.  **DENIED**. Fabian seeks to strike a reservation to add affirmative defenses.  Thus, the Court declines to strike this reservation, which is not, by definition, an affirmative defense.

Accordingly, the motion to strike affirmative defenses raised in the Nano Defendants' answer is **GRANTED IN PART** and **DENIED IN PART**.

**IV.    MOTION TO DISMISS FOR *FORUM NON CONVENIENS*[3]**

**A.    Legal Standard**

"Dismissal pursuant to the doctrine of *forum non conveniens* is a 'drastic exercise of the court's inherent power' and one that is 'an exceptional tool to be employed sparingly . . . 'The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal . . . A defendant must show that the chosen forum results in 'oppressiveness and vexation . . . out of proportion to the Plaintiff's convenience.'" *Kedkad v. Microsoft Corp., Inc.*, No. C13-0141-THE, 2013 WL 5945807, at *2 (N.D. Cal. Nov 4, 2013); *see also Ridgway v. Phillips*, 383 F. Supp. 3d 938, 948-49 (N.D. Cal. 2019) (defendants must make a clear showing of facts establishing that litigating in this forum is so "oppressive and vexatious" as to be "out of proportion to plaintiff's convenience.").

---

[3]  The parties have filed several ancillary requests and objections with regards to evidence in support of the motion to dismiss for *forum non conveniens*.  First, Fabian's request for judicial notice of the deposition transcript of LeMahieu.  (Dkt. No. 101.)  That request is **DENIED**, as deposition transcripts are not properly subject to judicial notice by Courts.  *See Warwick v. Bank of New York Mellon*, No. CV 15-3343, 2016 WL 2997166, at *11 (C.D. Cal. May 23, 2016); *Hernandez v. Santa Clara Cty. Sheriff's Dep't*, No. 06-CV-6977, 2009 WL 1537877, at *1 n.1 (N.D. Cal. June 2, 2009).  The Court does consider the evidence in so far as it constitutes admissions by LeMahieu under Federal Rule of Evidence 801.  Second, Fabian objects to the evidence submitted by the Nano Defendants in connection with the reply.  (Dkt. Nos. 95 (objections), 98 (opposition).)  Having reviewed the briefing and the arguments therein, these objections are **OVERRULED**.

United States District Court
Northern District of California

1   "To prevail on a motion to dismiss based on *forum non conveniens*, a defendant bears the

2   burden of demonstrating: (1) the adequacy of the alternative forum and (2) that the balance of

3   private and public interest factors favors dismissal . . . . A forum non conveniens determination is

4   committed to the sound discretion of the district court." *Kedkad*, 2013 WL 5945807, at \*2

5   (internal citations and quotation marks omitted). *See also Piper Aircraft Co. v. Reyno*, 454 U.S.

6   235, 247-52 (1981). "In a motion to dismiss on the ground of *forum non conveniens*, the burden

7   of proving an alternative forum is the defendant's and . . . the remedy must be clear before the case

8   will be dismissed." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983), *cert. denied*, 464

9   U.S. 101 (1983). "In carrying this burden, [a defendant] must provide sufficient information to

10   enable the district court to balance the parties' interests." *Contact Lumber Co. v. P.T. Moges*

11   *Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990). This standard requires a "clear showing of

12   facts." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1236 (9th Cir. 2011).

13   "[U]nless the balance [of conveniences] is strongly in favor of the defendant, the plaintiff's

14   choice of forum should rarely be disturbed*." Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

15   "When the home forum has been chosen, it is reasonable to assume that this choice is convenient.

16   When the plaintiff is foreign, however, this assumption is much less reasonable." *Piper Aircraft*

17   *Co.*, 454 U.S. at 255-56. Further, "the greater the degree of deference to which the plaintiff's

18   choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to

19   prevail in securing *forum non conveniens* dismissal." *Iragorri v. United Technologies Corp.*, 274

20   F.3d 65, 74 (2d Cir. 2001). "Although great weigh is generally accorded plaintiff's choice of

21   forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given

22   less weight." *Hendricks v. StarKist*, Case No. 13-cv-729-YGR, 2014 WL 1245880, at \*2 (N.D.

23   Cal. Mar. 25, 2014) (citing *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987)). However, in class

24   actions, courts have still given some deference to the named plaintiff's choice of forum where the

25   plaintiff lived in the transferor district and the events at issue occurred in the transferor district. *Id.*

26   at \*2-3.

27   Here, Fabian chose his home forum where some of the events at issue occurred – a

28   presumptively convenient choice which should ordinarily not be disturbed. *See Carijano*, 643

1    F.3d at 1227 ("When a domestic plaintiff initiates litigation in its home forum, it is presumptively

2    convenient.").  Thus, the Court gives some deference to Fabian's choice of forum.

3        **B.    Analysis**

4        Here, the Nano Defendants aver that the complaint should be dismissed on the ground of

5    *forum non conveniens*.  Specifically, the Nano Defendants contend that the appropriate forum is

6    Italy, and not the Northern District of California.  Based on the foregoing authority, the Court first

7    determines the the adequacy of the alternative forum, Italy, before reviewing the private and

8    public interest factors, and, finally, balancing these factors to determine whether the complaint

9    should be dismissed.  As discussed below, the Court concludes that, on balance, a dismissal on the

10    doctrine of *forum non conveniens* is not warranted here.

11            *1.    Whether Italy is An Adequate Alternative Forum*

12        "An alternative forum is deemed adequate if: (1) the defendant is amenable to process

13    there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F.3d at 1225.

14    Furthermore, "[t]he foreign court's jurisdiction over the case and competency to decide the legal

15    questions involved will also be considered." *Id.* (*citing Leetsch v. Freedman*, 260 F.3d 1100, 1103

16    (9th Cir. 2001)).

17        Fabian does not contest the first factor – that the defendants are amenable to process in

18    Italy.  Nor can he contest this factor, where the Nano Defendants have uniformly indicated that

19    they would be amenable to process in Italy.  Along with the BitGrail Defendants, who are based in

20    Italy, the first factor is clearly satisfied.

21        With regards to the second factor, Fabian avers that Italy does not offer a satisfactory

22    remedy such that it is an adequate alternative forum.  Specifically, Fabian asserts that the Nano

23    Defendants do not demonstrate that Fabian can achieve similar relief on behalf of a nationwide

24    class in the Italian courts.  Moreover, Fabian contends that the bankruptcy proceedings in Italy

25    would likely stay any relief Fabian could obtain, that class actions are not as successful in Italian

26    courts as they are in United States federal actions, and that the discovery process is more

27    cumbersome and limited in Italian courts.

28        These arguments do not persuade.  Courts routinely reject arguments that limited discovery

United States District Court
Northern District of California

1    and the difficulties of certifying a class, as compared to federal courts in the United States, are

2    relevant to a determination of whether an alternative forum is adequate.  *See, e.g., Carijano v.*

3    *Occidental Petroleum Corp.*, 548 F. Supp. 2d 823, 830 (C.D. Cal. 2008) ("The fact that Peru lacks

4    a class action mechanism does not make it inadequate for forum non conveniens purposes."), *rev'd*

5    *on other grounds*, 643 F.3d 1216 (9th Cir. 2011); *Deirmenjian v. Deutsche Bank, A.G.*, No. 06-CV

6    06-774, 2006 WL 4749756, at *8 (C.D. Cal. Sept. 25, 2006) ("The mere fact that Germany lacks a

7    class action mechanism does not make it inadequate for forum non conveniens purposes,

8    however."); *Sarei v. Rio Tinto PLC*, 221 F. Supp. 2d 1116, 1170 (C.D. Cal. 2002) ("Nonetheless,

9    the court finds that the unavailability of class actions . . . do not render Papua New Guinea an

10   inadequate forum for forum non conveniens purposes."); *Harp v. Airblue Ltd*, 879 F. Supp. 2d

11   1069, 1074 (C.D. Cal. 2012) ("Differences in discovery procedures do not provide a sufficient

12   basis for finding an alternative forum to be inadequate."); *In re Air Crash Over the Taiwan Straits*

13   *on May 25, 2002*, 331 F. Supp. 2d 1176, 1187 (C.D. Cal. 2004) ("Plaintiffs' arguments regarding

14   the availability of . . . pretrial discovery . . . do not warrant a finding that Taiwan's procedural

15   safeguards are inadequate for forum non conveniens purposes."); *Pavlov v. Bank of NY Inc.*, 135

16   F. Supp. 2d 426, 434-35 (S.D.N.Y. 2001) ("[T]he unavailability of pretrial discovery . . . does not

17   render the forum inadequate.").

18         Instead, it is only "where the remedy offered by the other forum is clearly unsatisfactory"

19   will an alternative forum be inadequate.  *Piper*, 454 U.S. at 245 n.22.  "A foreign forum must

20   merely provide *some* remedy."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015)

21   (emphasis supplied).  In other words, for an alternative forum to fail to be adequate, the remedy

22   provided there must be "so clearly inadequate or unsatisfactory, that it is no remedy at all."  *Lueck*

23   *v. Sundstrang Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (internal quotation marks omitted).

24         Here, based on the record including the declarations submitted by the Nano Defendants,

25   the Court concludes that Italy is an adequate alternative forum to hear the claims at issue.  The

26   courts are open, impartial, and authorized to provide full compensatory damages for the wrongs

27   alleged in the amended complaint.  While any Italian based proceedings would be stayed pending

28   the ongoing BitGrail bankruptcy proceedings in Italy, such a stay does not ultimately preclude the

relief sought in Italy.  Indeed, courts that have specifically considered the adequacy of Italian courts have generally found Italian courts as an adequate alternative forum.  *See Costa Sandoval v. Carnival Corp.*, No. 12-CV-5517, 2014 WL 12585803, at *4 (C.D. Cal. Sept. 15, 2014) (holding Italy adequate to hear negligence claims related to shipwreck); *Giglio Sub S.N.C. v. Carnival Corp.*, No. 12-CV-21680, 2012 WL 4477504, at *13 (S.D. Fla. Sept. 26, 2012) (same).  Thus, the Court here similarly concludes that Italy is an adequate alternative forum.

### 2.    *Private Interest Factors*

The private interest factors to consider when determining whether to grant a motion to dismiss for *forum non conveniens*, as enumerated by the Ninth Circuit in *Carijano*, are as follows: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See Carijano*, 643 F.3d at 1229 (citing *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009)).  The Court considers each of these factors in turn below. Thus:

1. Residence of the Parties and the Witnesses.  When reviewing this factor, courts look to "the materiality and importance of the anticipated witnesses' testimony." *Kleiner v. Spinal Kinetics, Inc.*, No. 5:15-cv-02179-EJD, 2016 WL 1565544, at *4 (N.D. Cal. Apr. 19, 2016) (*quoting Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)). "The key inquiry . . . requires assessing the materiality and importance of these witnesses' testimony and determining whether some of these witnesses are 'critical' and beyond the jurisdiction of domestic courts." *Kleiner*, 2016 WL 1565544, at *4; *see also Lueck*, 236 F.3d at 1146 ("We have said previously that a court's focus should not rest on the number of witnesses or quantity of evidence in each locale. Rather, a court should evaluate 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine . . . their accessibility and convenience to the forum.'") (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)).

Here, Fabian is a resident of Discovery Bay, California, which is within the boundaries of the United States District Court of the Northern District of California.  Based on the amended

1   complaint, some of the actions occurred within the district.  Moreover, to the extent that California

2   law applies, California itself has an interest in preventing fraud within its borders.  *See Boston*

3   *Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009) (California has an "interest in

4   preventing fraud from taking place within its borders.").

5           Of the Nano Defendants: Nano is a Texas corporation with its principle place of business

6   in Austin, Texas; LeMahieu is a resident of Texas, but has spent significant time in Europe;

7   Shapiro lives in New York; Retzer lives in Massachusetts; and Busch lives in Illinois.  Thus, some

8   material information is likely in the hands of the Nano Defendants who are located primarily

9   throughout the United States.

10          In addition to the Italy-based BitGrail Defendants, the Nano Defendants also identify

11  several witnesses in Italy that, they assert, are crucial to the matter here. These witnesses include:

12  (1) the bankruptcy court-appointed expert, the *Consulete Tecnico d'Ufficio*, Dal Checco; (2) the

13  experts retained by Firano, the public prosecutor's office, and the principal creditor, Eirik

14  Ulversøy, in the same proceedings; (3) Firano's partner, Andrea Davoli; (4) assistants who helped

15  Firano and Davoli operate BitGrail; and (5) the prosecutors investigating Firano's criminal

16  liability in the matter.

17          These individuals identified above present a close question: some of these individuals

18  appear to have material and important information related to this litigation, and others do not.

19  Indeed, the Court cannot determine how expert witnesses appointed by the Italian bankruptcy

20  court, the expert witnesses retained by the parties in the Italian proceedings, and the public

21  prosecutors themselves could be material witnesses in this matter.[4]  But the Court recognizes that

22  BitGrail, Firano, Davoli, and the assistants who helped run BitGrail may indeed be material and

23  important witnesses in this matter.  As a whole, the Court notes that some material and important

24  witnesses are located throughout the United States – relating to the Nano Defendants – and Italy –

25

26  _____

27          [4]  Moreover, the Nano Defendants provide no authority that such individuals are even
    appropriately called as witnesses in the Italian courts.  While the Court is unfamiliar with the
    nuances of Italian law, the Court expresses skepticism at the notion that public prosecutors in
28  parallel criminal proceedings can be called as fact or expert witnesses in related civil proceedings.

United States District Court
Northern District of California

1    relating to the BitGrail Defendants.  Thus, on balance, this factor weighs neutrally between the

2    two forums.

3           2. Forum's Convenience to the Litigants.  The Nano Defendants only identify LeMahieu's

4    inconvenience in traveling to this district in support of Italy as an alternate forum.  Specifically, at

5    the time of the briefing of this motion, Le Mahieu was residing in Madrid, Spain.[5]  However,

6    where the remainder of the parties in this action, aside from the BitGrail defendants and

7    LeMahieu, reside in the United States, the Court is not persuaded that this factor weighs in favor

8    of Italy over California.  Indeed, the undisputable facts – that Fabian and lead counsel are located

9    here in this district and that most of the defendants reside in the United States – show that this

10   district is highly convenient to the parties.  *See In re Volkswagen "Clean Diesel" Mktg., Sales*

11   *Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 66281, at *9 (N.D. Cal. Jan. 4,

12   2017) ("The forum is clearly convenient for Plaintiffs as they brought suit here."); *Carijano,* 643

13   F.3d at 1227 ("When a domestic plaintiff initiates litigation in its home forum, it is presumptively

14   convenient.").

15          Thus, this factor weighs in favor of the United States and California over Italy.

16          3. Access to Physical Evidence and Other Sources of Proof.  When evidence is available

17   under the Hague Convention, this factor tends to weigh in favor of the potential transferor

18   jurisdiction.  *See Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1181 (9th Cir. 2006)

19   ("Any court . . . will necessarily face some difficulty in securing evidence from abroad," but that

20   does not justify dismissal when the administrative costs are not particularly great); *Boston*

21   *Telecom*., 588 F.3d at 1210 (determining that this factor is neutral when seeking evidence from a

22   foreign jurisdiction under the Hague Convention, and "do[es] not necessarily justify dismissal.").

23          Here, the parties point to evidence in both locations – in Italy and the United States.

24   Fabian highlights that some evidence is likely in the hands of the Nano Defendants themselves.

25   On the other hand, the Nano Defendants identify that relevant and significant evidence exists in

26

27          [5]  The Court recognizes that – in light of the ongoing coronavirus pandemic (COVID-19),
     LeMahieu may no longer reside in Madrid.
28

United States District Court
Northern District of California

Italy. Moreover, the Nano Defendants' expert witness notes that obtaining documents through the Hague Convention would be "time consuming, expensive, and complicated."

These arguments do not persuade. Expensiveness and complexity aside, the Nano Defendants concede that the Hague Convention would permit the parties to obtain the evidence in Italy. The Court recognizes that a significant portion of evidence – evidence that would likely be relevant to the Nano Defendants' affirmative defenses – is within Italy. However, where the Hague Convention would permit both parties access to the evidence, the Court cannot conclude that this factor weighs in favor of Italy. Thus, this factor is neutral as to the two forums.

4. Whether Unwilling Witnesses Can Be Compelled to Testify. Where no unwillingness of witnesses to appear has been shown, this factor does not tend to weigh in favor dismissal. *See Carijano*, 643 F.3d at 1231 (*citing Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006)).

Here, the Nano Defendants aver that the BitGrail Defendants, and witnesses associated with the BitGrail Defendants are unlikely to appear in this action. The Nano Defendants further highlight that the Nano Defendants are willing to submit themselves to the jurisdiction of Italy, and that this factor therefore weighs in favor of Italy. Fabian responds that this determination is premature where the Court, at the time of the briefing the motion to dismiss, had not yet ruled on the motion for alternate service on the BitGrail defendants.

Fabian's arguments do not persuade. While the Court cannot make a final determination as to whether the BitGrail Defendants will appear as this Order only just effectuated service on the BitGrail Defendants, the Court notes that, in light of the Nano Defendants' statement of their submission to the Italian Courts, Italy appears to be the only forum where all witnesses would willingly appear. Thus, at this time, this factor weighs slightly in favor of Italy.

5. Cost of Bringing Witnesses to Trial. "The factor relating to the cost of bringing witnesses to trial is largely tied to the location of witnesses with material information regarding the Plaintiff's claims." *See Kleiner*, 2016 WL 1565544, at *4.

Here, as discussed, the parties and material witnesses are located throughout the United States and Europe. Neither travel to California nor Italy is particularly cheap for the entirety of the parties and witnesses in this matter. Thus, this factor is neutral as to the two forums.

United States District Court
Northern District of California

18

6. Enforceability of the Judgment.  The Nano Defendants aver that proceedings in Italy would be automatically enforceable globally in light of their waivers to accept judgment from the Italian courts.  The Nano Defendants highlight that there may be some issues for Fabian and the class in obtaining a judgment against the BitGrail defendants, in light of the ongoing bankruptcy proceedings, and that enforcing a judgment from a United States district court is not automatically enforceable in Italy.  Thus, this factor weighs slightly in favor of Italy.

7. All Other Practical Problems. The Court concludes that neither party provides persuasive arguments on this factor, nor identifies any further practical problems that are relevant to the determination here. Thus, this factor is neutral as to the two forums.

*3.      Public Interest Factors*

The public interest factors, as enumerated by the Ninth Circuit in *Carijano*, are as follows: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum. *See Carijano*, 643 F.3d at 1232 (*citing Boston Telecomms.*, at 1211).  The Court considers each of these factors in turn below. Thus:

1. Local Interest in the Lawsuit.  In deciding this factor, the Court "need not hold, California is the principal locus of the case or that California has more of an interest than any other jurisdiction to conclude that California has a meaningful interest in this litigation. [W]ith this [public] interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest . . . California has an interest in preventing fraud from taking place within its borders." *Boston Telecom*, 588 F.3d at 1212; *see also Kleiner*, 2016 WL 1565544, at *6 ("Here, the court finds that Germany has a significant local interest in this lawsuit. Plaintiffs are residents of Germany, underwent their respective implantation operations in Germany, and suffered similar injuries there.").

The Nano Defendants' arguments to the contrary notwithstanding, California has a meaningful interest in the controversy as "California has an interest in preventing fraud from taking place within its borders."  Although the Nano Defendants characterize Fabian's actions in this state as constituting of a "few mouse clicks," such actions are still significant enough that

1    Fabian is now seeking to recover damages that he and the similarly situated proposed class

2    sustained that resulted from those clicks.

3           Thus, the Court concludes that this factor weighs against dismissal and in favor of

4    California.

5           2. Court's Familiarity with the Governing Law.  Unless certain federal statutes are

6    implicated, district courts do not need to make a definitive choice of law determination for the

7    purposes of deciding a *forum non conveniens* motion.  *See Lueck*, 236 F.3d at 1148.  Here, based

8    on the parties' briefing, the Court expressly declines to make a definitive choice of law

9    determination.  However, the Court is not persuaded that Italian law conclusively governs the

10   claims against the defendants or that Italy has a significant interest in seeing its laws applied that is

11   greater than California's (or another United States jurisdiction's) interest.  This is especially so

12   where the class to be certified is a United States national class led by a California based lead

13   plaintiff.  Moreover, the defendants in this lawsuit include several United States citizens as well as

14   a company organized within the United States.  Thus, the Court concludes that this factor weighs

15   in favor of California.

16          3. Burden on Local Courts and Juries. The Nano Defendants aver that this Court would

17   require numerous exhibits and pieces of evidence translated from Italian into English.  The Nano

18   Defendants' arguments do not persuade.  The inverse is also true: there are several pieces of

19   evidence in English in the possession of the Nano Defendants and there are claims that would

20   likely require the application of California law to reach resolution.  The Italian courts would

21   therefore be left in a similar situation of requiring translations of material evidence.  This is

22   unsurprising given the global nature of the commerce in this action.  The Court is otherwise

23   unpersuaded by the parties' remaining arguments.  Thus, the Court concludes that this factor

24   weighs neutrally.

25          4. Congestion in the Court.  "The determinative inquiry regarding th[is] factor[] is whether

26   a trial would be speedier in another court due to a less crowded docket."  *Kleiner*, 2016 WL

27   1565544, at *7.  As the Nano Defendants highlight and the Court acknowledges, the Northern

28   District of California has a significant number of civil filings and pending motions per judge.  The

United States District Court
Northern District of California

20

Nano Defendants also submit evidence that Italian proceedings have "tight timelines" for pleadings and briefings. However, in light of the bankruptcy stay in Italy, it is unclear whether proceedings in Italy would be faster than proceedings in this district. Thus, the Court concludes that this factor weighs neutrally.

5. Costs of Resolving a Dispute Unrelated to a Particular Forum. The Nano Defendants aver that California has minimal interest in this dispute. On the other hand, Fabian asserts that California has a significant interest in this litigation. In light of the Court's prior findings – that California has an interest in this litigation, and that the costs weigh evenly between the forums – the Court finds that this factor weighs slightly in favor of California.

4.    *The Weighing of the Private and Public Factors*

In light of the foregoing analysis, the Court concludes that the balance of factors is close, but that the balance does not warrant a dismissal of this case on the grounds of *forum non conveniens*. Indeed, the Court remarks that this case only demonstrates the global interconnectedness of the cryptocurrency market: where cryptocurrency programmers, operators, and consumers on both sides of the transactions can be from numerous and different countries. Despite this close balancing, the Court notes that even if some factors were shifted in favor of Italy, it would not be enough to disturb Fabian's choice of forum in his home forum, which here is entitled to some deference. In other words, the Nano Defendants have failed to demonstrate the continued litigation in this district results in "oppressiveness and vexation" that is "out of proportion" to the Fabian's convenience to his choice of forum.

Accordingly, in light of the above, the Court **DENIES** the motion to dismiss for *forum non conveniens*.

**V.    CONCLUSION**

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

(1) the motion for leave to effect alternative service is **GRANTED**;

(2) the motion to strike affirmative defenses raised in the Nano Defendants' answer is **GRANTED IN PART** and **DENIED IN PART**; and

(3) the motion to dismiss for *forum non conveniens* is **DENIED**.

1  Further, the Nano Defendants request leave to amend to remedy any dismissed affirmative

2  defense.  In light of the foregoing, the Court **GRANTS** the request for leave to amend the answer

3  solely to the ninth affirmative defense.  Such an amended answer shall be due within fourteen (14)

4  days of the date of this Order.   Fabian is prohibited from filing a motion with respect to that

5  affirmative defense without permission from the Court.

6  This Order terminates Docket Numbers 81, 84, and 85.

7  **IT IS SO ORDERED.**

8  Dated: June 19, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**