UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEC OTTO,<br><br>    Plaintiff,<br><br>    v.<br><br>COLIN LEMAHIEU, ET AL.,<br><br>    Defendants. | Case No. 4:19-cv-00054-YGR<br><br>ORDER GRANTING MOTION TO STRIKE THE REPORT OF DAVID WEISBERGER<br><br>Re: Dkt. No. 179 |

Plaintiff Alec Otto brings this putative class action against defendants Nano f/k/a/ RaiBlocks f/k/a Hieusys, LLC ("Nano"), Colin LeMahieu, Mica Busch, Zack Shapiro, and Troy Retzer (collectively, "Nano Defendants") as well as B.G. Services SRL f/k/a BitGrail SRL f/k/a Webcoin Solutions ("BitGrail") and Francesco "The Bomber" Firano (collectively "BitGrail Defendants") for securities fraud and related claims in connection with defendants' promotion of and statements regarding a cryptocurrency or digital asset referred to as NANO f/k/a RaiBlocks ("XRB" or "Nano Tokens").

Now before the Court is a motion to strike the report of David Weisberger filed by the Nano Defendants. (Dkt. No. 179.) Mr. Otto opposes the motion (Dkt. No. 185), and the matter was fully briefed by the parties. (*See also* Dkt. No. 186 (reply).)

Having carefully reviewed the record, the papers submitted on each motion, and for the reasons set forth more fully below,[1] the Court **GRANTS** the motion to strike.

---

[1] The Court has reviewed the papers submitted by the parties in connection with the Nano Defendants' motion to strike. The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 728-29 (9th Cir. 1991). Accordingly, the Court **VACATES** the hearing scheduled for April 27, 2021.

The standards for evaluating expert reports are not in dispute. Federal Rule of Evidence 702 permits opinion testimony by an expert as long as the witness is qualified and their opinion is relevant and reliable. An expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702. Fed. R. Evid. 702, Advisory Committee Notes (2000 amendments). An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable. See *Thompson v. Whirlpool Corp.*, 2008 WL 2063549, at *3 (W.D. Wash. 2008) (citing *Daubert v, Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993) (*Daubert I*)). Moreover, at the class certification stage, the Court does not make an ultimate determination of the admissibility of an expert's opinions for purposes of a dispositive motion or trial. *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 602 n. 22 (9th Cir. 2010) (*Dukes II*) *rev'd on other grounds b*y 564 U.S. 338 (2011); *Millenkamp v. Davisco Foods Int'l*, Inc., 562 F.3d 971, 979 (9th Cir. 2009). Rather, the court considers only whether the expert evidence is "useful in evaluating whether class certification requirements have been met." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495–96 (C.D. Cal. 2012) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)); *see also Rai v. Santa Clara Valley Trans.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015). At class certification, "the relevant inquiry is a tailored Daubert analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Id*.

The Court summarizes Mr. Weisberger's cursory seven (7) page expert report:[2] Mr. Weisberger was retained to answer two questions: first,

> [T]o determine whether the information provided by the core development team for XRB was relied upon by investors when they decided to purchase XRB on BitGrail, if the information asymmetry between the developers and the public was more severe in this case because of the relationship between the XRB core developers and

---

[2] This Order assumes familiarity with the facts of this action in order to expedite the issuance of this action. A related pending motion for class certification is currently scheduled to be heard by the Court late in May 2021.

>BitGrail and if that information was significantly correlated to the price movement in XRB throughout the period.

(Weisberger Rep. ¶ 1.) Second, Mr. Weisberger was "asked if information likely withheld from investors by the development team was consequential to the investors and if the development team had a clear motivation for withholding information until the time that the BitGrail insolvency was announced publicly." (*Id.* ¶ 2.) In answering these questions, Mr. Wiesberger notes that he "analyzed a wide variety of information and documents, including Twitter announcements by the developers, publicly available announcements from crypto exchanges, price data from CoinMarketCap, Reddit Threads and other documents made available through the discovery process." (*Id.* ¶ 3.)

The report thereafter details Mr. Weisberger's credentials (*id.* ¶ 6), and contains an executive summary and conclusions (*id.* ¶¶ 7-8), before providing a background on the state of the 2017 crypto market structure, as well as its relation to the specific Raiblocks (XRB) currency. (*Id.* ¶¶ 9-14.) Next, the report cites to public data in discussing the price fluctuations of XRB during 2017 and 2018. (*Id.* ¶¶ 15-17.) The report then contains one paragraph summarizing Mr. Otto's allegations in the complaint. (*Id.* ¶ 18.)

Finally, Mr. Weisberger's report contains a section addressing the Federal Rule of Civil Procedure 23 requirements. (*Id.* ¶¶ 19-22.) Regarding the numerosity requirement, Mr. Weisberger opines:

>In addition to the large number of initial holders, XRB volumes on Bitgrail were significant and spread among a great many accounts. It is quite clear that there were many XRB holders impacted by the loss of roughly $170 million in XRB at the time the hack was announced, particularly since there were few large holders involved in the bankruptcy proceedings. Bitgrail was, by far, the dominant exchange trading XRB during May through November of 2017, meaning that there were a great many people that were likely impacted by the loss of those coins.

(*Id.* ¶ 19.) Regarding the commonality and typicality requirements:

>The average investor in XRB was either a reader or participant in the Reddit threads that discussed XRB or a follower of the core developer group on Twitter. Many of them acquired some XRB via the faucet, but many believed the intensive marketing efforts of the developer team to create a market for the currency. The global retail market for cryptocurrencies in 2017 was extremely reactive to social media and very broad based, and there is every reason to believe that the

"hodlers"[3] of XRB acted on the same information sources.

(*Id.* ¶ 20.)  Regarding specifically identifying potential class members:

> There should be detailed records from the Bitgrail bankruptcy proceedings of the account holders who should have had XRB in their accounts. In addition, most holders of crypto currencies are likely to maintain their own records of their holdings and should be able to prove the holdings that they were entitled to. In addition, all those who received distributions via the faucet and moved their coins to Bitgrail should be able to prove those transactions.

(*Id.* ¶ 21.)  Finally, regarding the Rule 23(b)(3) superiority requirement:

> Based on the Reddit threads, the average investor in XRB that lost their assets in the hack were relatively small. Judging by the number of complaints and the lack of any single person commenting on their losses to the media, it looks to have resembled Mt. Gox and other infamous hacks where the damages were spread over a great number of people.

(*Id.* ¶ 22.)

Based on the above report, the Nano Defendants contend that the report is appropriately stricken as (1) irrelevant, and (2) inadmissible under Federal Rule of Evidence 702 and the *Daubert* standard.[4]  With regard to the latter, the Nano Defendants aver that Mr. Weisberger has not shown the use of any scientific method or analytical principles for any of his opinions, or that such method or principle was reliable, its error rate, or that it is accepted in any scientific community.  This is especially so where the Nano Defendants cite to Mr. Weisberger's deposition testimony reflecting speculative testimony on some of his opinions,[5] testimony that undercuts Mr.

---

[3]  As explained by Mr. Weisberger, "'Hodl' is a crypto term for someone who buys and holds a cryptocurrency for the long term expecting large returns on their investment." (*Id.* at 7 n.5.)

[4]  The Nano Defendants also challenge Mr. Weisberger's credentials.  Specifically, the Nano Defendants argue that Mr. Weisberger fails to list any relevant experience supporting his opinions, including graduate-level or technical degrees, any prior experience working as an expert, any scholarly work in a relevant field, or published studies.  Instead, the Nano Defendants contend that Mr. Weisberger's relevant experience is limited to his "evaluation" of a crypto-exchange-related project, which Mr. Weisberger fails to connect to any methodology he might have used to support his opinions.  The Court need not address these challenges given the analysis herein finding fatal a lack of any credible and accepted methodology in providing the opinions in the report.

[5]  *See*, *e.g.*, Weisberger Deposition ("Dep.") at 242:17-18 ("I do not know the precise number [of BitGrail account holders]. **I do not even have a strong estimate**. I remember looking

4

Weisberger's use of social media posting in forming his opinions,[6] and conceding unfamiliarity with the specific XRB platform at issue in this litigation.[7] The Nano Defendants further cite to an expert report prepared by Steven McNew for the Nano Defendants, which highlights that Mr. Weisberger did not employ any sound methodology in arriving at his conclusions or opinions.[8]

In opposition, Mr. Otto focuses on the paragraphs discussing the Rule 23 requirements. Specifically, Mr. Otto contends that the report, specifically paragraphs 19 through 22, is relevant to the Court's determination on the pending motion for class certification. Moreover, Mr. Otto asserts that Mr. Weisberger utilizes a sound methodology where cryptocurrency is a new and "rapidly evolving" field. Finally, Mr. Otto argues that the Court retains broad discretion on ruling on a *Daubert* motion, and that the report is otherwise reliable.

Mr. Otto does not persuade. First, the Court notes that Mr. Otto does not address the relevance of the earlier portions of the report. It is not uncommon for experts to issue reports which include the kinds of sections which are discussed herein. That information is frequently needed for discovery purposes so that the parties can understand the perspectives of a proposed expert's opinions. That process is different from the filing of a motions for class certification. For purposes of class certification, litigants offer the opinions of their experts and the methodology

---

at it and seeing that it was a large number, like thousands." (emphasis supplied)).

[6] *See, e.g., id.* at 179:13-18 ("I don't trust – **honestly I have very little trust for anything that I read about crypto** unless I can confirm it. It's part of being three years in the landscape, **you develop a healthy sense of skepticism which I was already very skeptical to begin with**." (emphasis supplied)).

[7] *See, e.g., id.* at 269:10-13 ("Q. **Do you know what type of records BitGrail provided with respect to account holders? A. No, I do not.** I never had an account there so I do not know." (emphasis supplied).); *id.* at 270:16-20 (**I am not an expert on the Nano Blockchain to know what they memorialized.** Were it Bitcoin, you probably could trace it. **I do not know how Nano Blockchain works well enough to know whether or not you could.** My suspicion is no, but I do not know." (emphasis supplied)

[8] *See* McNew Rep. at 5 ("Without factual evidence to prove the number of purchasers, dates, and amounts held, there is no factual basis to assert that 'there were a great many people that were likely impacted by the loss of those coins.' One would expect reports and data that show a minimum number of BitGrail XRB holders, but Mr. Weisberger did not rely on such evidence."); *id.* ("Sometimes the methodology is as simple as arithmetic. Other times more sophisticated mathematical calculations are required.").

and foundation for the same, usually by way of declaration. Thus, while the Court agrees that the earlier sections of the report are not relevant to the Court's analysis on the pending motion for class certification, and are therefore appropriately stricken, the Court is not encouraging the filing of motions for that purpose.

Second, and more importantly, Mr. Weisberger's report fails to articulate *any* generally accepted methodology in reaching *any* of his conclusions or opinions as it relates to class certification. To determine whether a scientific opinion is sufficiently reliable to be admissible, the Court must "analyze not what the expert[s] say[ ]s, but what basis they have for saying it." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1216 (9th Cir. 1995) (*Daubert II*). "Under Federal Rule of Evidence 702, [t]he burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the expert is qualified and meets the necessary admissibility requirements." *Young v. Cree Inc.*, No. 4:17-CV-06252-YGR, 2021 WL 292549, at *13 (N.D. Cal. Jan. 28, 2021) (internal quotation marks omitted).

Methodology can be reliable if: (i) the methodology can and has been tested; (ii) the methodology has been subjected to peer review; (iii) the known or potential rate of error for the technique has been addressed; or (iv) the methodology has a general degree of acceptance in the relevant scientific community. *Daubert I*, 509 U.S. 593-94. The Court agrees with Mr. Otto that in some situations, "[p]eer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest to be in the literature." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). In those circumstances, expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. In order words, an expert must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *see also United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994) (research must be described "in sufficient detail that the district court [can] determine if the research was scientifically valid.").

Here, Mr. Weisberger fails to demonstrate that his purported methodology, relying on social media and public information, can meet any of the articulated bases for acceptance under

6

the *Daubert* standard. As demonstrated by his deposition transcript and Mr. McNew's report, Mr. Weisberger has no reliable basis in forming his opinions or conclusions. Mr. Weisberger's testimony both in his deposition and in his report reflect a high level of speculation, untethered to and unsupported by any facts in the record. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (affirming district court's exclusion of expert testimony on the grounds that it was "unsupported by the facts" and noting that "speculative testimony is inherently unreliable."). Indeed, Mr.Weisberger fails to give even an estimate as to the number affected in this litigation, instead using vague terminology without any numerical reference in the report.

Moreover, Mr. Weisberger's report contains a blatant overreliance on social media postings without justification. Mr. Weisberger cites to no data or survey reflecting that cryptocurrency users, much less XRB holders, utilize Reddit or Twitter postings for information. Indeed, Mr. Weisberger's own deposition testimony reflects that he himself views such information posted online skeptically. He provides no articulation for why his report foundationally relies upon such postings in an apparent exception to his general view.

Fatally, Mr. Weisberger concedes he has no specific experience with the cryptocurrency platform or asset (XRB) at issue. Instead, Mr. Weisberger attempts to draw upon his *general* experience with cryptocurrency in attempting to make opinions and conclusions in this action. This is impermissible where, as here, Mr. Weisberger fails to explain why such *general* experiences should be applied to the specific XRB currency at issue in this litigation. Truly, Mr. Weisberger's report reflects a woeful lack of knowledge as to XRB—including as to the types of records kept or maintained by either XRB holders or the exchange (BitGrail).

In sum, Mr. Weisberger's expert report is inherently unreliable and based merely on publicly available information and social media postings in supporting Mr. Otto's motion for class certification. Mr. Weisberger's opinions do not add anything where he merely regurgitates information untethered to any methodology and is otherwise speculative. This is exactly the type of testimony that fails under the *Daubert* standard—even at the class certification stage.

\\
\\

Accordingly, for the foregoing reasons, the Court **GRANTS** the motion to strike.

In light of Mr. Otto's reliance on Mr. Weisberger's purported opinions to support the second motion for class certification, Mr. Otto shall file a notice with the Court within five (5) business days advising whether he intends to proceed with the motion or withdraw it.

This Order terminates Docket Number 179.

**IT IS SO ORDERED.**

Dated: April 26, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**