**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
Peter Scoolidge (NY 4682100)
peter@sprfllp.com
Peter Fox (NY4832606)
pfox@sprfllp.com
2 Park Avenue - 20th Floor
New York, NY 10016
(212) 729-7708 tel
*Attorneys for Defendants Hieusys, LLC,
Colin LeMahieu, Troy Retzer, and Mica Busch*

**ZUCKERMAN SPAEDER LLP**
Shawn Naunton (NY 3958691)
snaunton@zuckerman.com
Devon Galloway (NY 5459896)
dgalloway@zuckerman.com
485 Madison Avenue
New York, NY 10022
(212) 704-9600 tel
*Attorneys for Defendant Zack Shapiro*

**CORNERSTONE LAW GROUP**
Paul J. Byrne (SBN 190860)
pbyrne@cornerlaw.com
351 California St Ste 600
San Francisco CA 94104
(415) 357-2094 tel
(415) 655-8238 fax
*Attorneys for Defendants Hieusys, LLC, Colin
LeMahieu, Troy Retzer, Mica Busch, and Zack Shapiro*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEC OTTO, individually; and on behalf of All Others Similarly Situated;<br><br>*Plaintiff*,<br><br>v.<br><br>NANO f/k/a RAIBLOCKS f/k/a HIEUSYS, LLC; COLIN LEMAHIEU; MICA BUSCH; ZACK SHAPIRO; TROY RETZER; BG SERVICES, S.R.L. f/k/a BITGRAIL S.R.L. f/k/a WEBCOIN SOLUTIONS; AND FRANCESCO "THE BOMBER" FIRANO,<br><br>*Defendants*. | Case Number: 4:19-cv-54-YGR<br><br>**OPENING BRIEF OF DEFENDANTS HIEUSYS, LLC, COLIN LEMAHIEU, MICA BUSCH, TROY RETZER, AND ZACK SHAPIRO IN SUPPORT OF SANCTIONS AGAINST PLAINTIFF ALEC OTTO AND HIS COUNSEL** |

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………1

DISCUSSION……………………………………………………………………2

CONCLUSION…………………………………………………………………12

# TABLE OF AUTHORITIES

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    579 F.3d 143 (2d Cir. 2009) .................................................................................................. 2

*China Agritech v. Resh*,
    138 S. Ct. 1800 (2018) ...................................................................................................... 5, 9

*Dahl v. City of Huntington Beach*,
    84 F.3d 363 (9th Cir. 1996) .................................................................................................. 9

*DNA Sports Perform. Lab Inc. v. Major League Baseball*,
    No. 20-CV-00546, 2020 WL 6290374 (N.D. Cal. Oct. 27, 2020) ........................................ 6

*Greenberg v. Sala*,
    822 F.2d 882 (9th Cir. 1987) ................................................................................................ 3

*Gurary v. Nu-Tech Bio-Med, Inc.*,
    303 F.3d 212 (2d Cir. 2002) ........................................................................................... 2, 11

*In re ANZ Banking Grp. Ltd. Sec. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) .................................................................................. 3

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) .................................................................................................. 3

*ITI Internet Servs., Inc. v. Solana Capital Partners, Inc*,
    No. 05-CV-2010, 2007 WL 666593 (W.D. Wash. Feb. 27, 2007) ....................................... 7

*Mir. v. Little Co. of Mary Hospital*,
    844 F.2d 646 (9th Cir. 1988) ................................................................................................ 5

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ................................................................................................. 2

*O'Brien v. Alexander*,
    101 F.3d 1479 (2d Cir. 1996) ............................................................................................... 6

*Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass'n of N. Cal.*,
    835 F.2d 1275 (9th Cir. 1987) .......................................................................................... 4, 8

*Rezvani v. Jones*,
    No. 18-CV-06244, 2019 WL 1100149 (C.D. Cal. Mar. 6, 2019) ......................................... 2

*Smith v. Ricks*,
    31 F.3d 1478 (9th Cir. 1994) ................................................................................................ 3

*Szabo Food Service, Inc. v. Canteen Corp.*,
   823 F.2d 1073 (7th Cir. 1987) .................................................................................... 4, 5

*Thompson v. RelationServe Media, Inc.*,
   610 F.3d 628 (11th Cir. 2010) ........................................................................................ 3

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) ........................................................................................ 3

*Unite Here v. Cintas Corp.*,
   500 F.Supp.2d 332 (S.D.N.Y. 2007) .............................................................................. 2

**Statutes**

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, §§ 101(a)-(b) ................... 2

**Other Authorities**

H.R. Conf. Rep. No. 104–349 (1995) ..................................................................................... 2, 11

S. Rep. No. 104–98 (1995) ........................................................................................................ 2

**Rules**

Fed. R. Civ. P. Rule 11(b) ............................................................................................... *passim*

- iii-
NANO DEFENDANTS' OPENING BR. ISO SANCTIONS                    Case No: 4:19-cv-54-YGR

**INTRODUCTION**

In its order granting Plaintiff Alec Otto's motion for voluntary dismissal, the Court directed the Nano Defendants[1] to brief the issue of whether sanctions against Mr. Otto and his attorneys are appropriate under Section 27(c) of the Securities Act of 1933.[2] Sanctions against Mr. Otto and his counsel are appropriate, and – indeed – required under the terms of Section 27(c).

Mr. Otto and his counsel violated Rule 11(b) of the Federal Rules of Civil Procedure as to both of the complaints and the supplemental pleadings in this action, the responsive pleadings, and also as to the dispositive motions. Specifically, Mr. Otto's counsel filed this case principally as Section 12(a)(1) class action, but those claims were facially time-barred. A variety of common law claims – seemingly pled as make weight – were also legally baseless. Mr. Otto and his counsel also violated Rule 11(b) by filing a "supplemental pleading" that contained numerous factual allegations about Mr. Otto's BitGrail transaction history that Mr. Otto later conceded had no evidentiary support. Mr. Otto's counsel again violated Rule 11(b) regarding the Nano Defendants' answer by filing a motion to strike that the Court has already determined was frivolous in part. Finally, they violated Rule 11(b) in their opposition briefing to the Nano Defendants' three motions to dismiss by advancing a serious of absurd and/or clearly legally meritless arguments.

Because Mr. Otto and his counsel violated Rule 11(b), under Section 27(c)(2), the Court must sanction them. And because the nature of these violations was such that the complaints in this case "substantially failed" to comply with Rule 11, under Section 27(c)(3), the presumptive form of these sanctions must be an award of the Nano Defendants' reasonable attorneys' fees and costs for defending the action, which sum to $701,600.84.

---

[1] The "Nano Defendants" are Hieusys, LLC, Colin LeMahieu, Troy Retzer, Mica Busch, and Zack Shapiro.

[2] *See* Order Granting Mot. to Withdraw Mot. for Class Cert. & Mot. for Voluntary Dismissal (Dkt. No. 197), at 3-4.

**DISCUSSION**

Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA") "motivated in large part by a perceived need to deter strike suits by opportunistic private plaintiffs that filed securities fraud claims of dubious merit in order to exact large settlement recoveries."[3]  Central to this concern was what Congress viewed as "an unwillingness on the part of courts to impose discretionary sanctions on parties who brought abusive securities fraud lawsuits.[4]"  Thus, the PSLRA made parallel amendments to the Securities Act of 1933 and the Securities Exchange Act of 1934,[5] intended, among other things, to "put[] teeth in Rule 11."[6]

The results are Section 27(c) of Securities Act and Section 21D(c) of the Exchange Act, identical provisions[7] that limit the district court's discretion both as to whether to conduct a Rule 11 inquiry and whether – and in what form – to impose sanctions should it find a violation of the rule.

<u>Mandatory Review by the Court</u>

Under Section 27(c)(1), district courts presiding over covered cases are required to "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion."  The statute's reference "*any* complaint" means that the district court must review all of the plaintiff's pleadings, not just the final amended complaint.[8]

---

[3] *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (citing H.R. Conf. Rep. No. 104–369, at 31 (1995)).

[4] *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 215 (2d Cir. 2002) (citing S. Rep. No. 104–98, at 13 (1995)).

[5] *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, §§ 101(a)-(b).

[6] *See Rezvani v. Jones*, No. 18-CV-06244, 2019 WL 1100149, at *4 (C.D. Cal. Mar. 6, 2019) (quoting *Unite Here v. Cintas Corp.*, 500 F.Supp.2d 332, 336 (S.D.N.Y. 2007)); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) ("The express congressional purpose of the PSLRA provision was to increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of frivolous securities claims.").

[7] Because the PSLRA amended the Securities Act and the Exchange Act in this respect in identical fashion, case law interpreting Section 21(c) of the Exchange Act is equally applicable to cases, such as this one involving Section 27(c) of the Securities Act.

[8] *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 664 (11th Cir. 2010) (Tjoflat, *J.* concurring) ("[W]hen a plaintiff files multiple complaints, each must be scrutinized."); *In re ANZ Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 266 (S.D.N.Y. 2010) ("Plaintiff's counsel have identified no authority for the proposition that the filing of an amended complaint overwrites a Rule 11

*(Footnote continued)*

- 2-

While the PSLRA significantly circumscribes the district court's discretion on whether to assess compliance with Rule 11(b), the substance of the inquiry does not change. In the Ninth Circuit, this means determining whether there has been a "frivolous filing."[9] For a filing to be frivolous, it must be "both baseless and made without a reasonable and competent inquiry."[10] A filing is still sanctionable, even if it is only frivolous in part.[11]

Baselessness can be either legal (in violation of Rule 11(b)(2))[12] or factual (in violation of Rule 11(b)(3)).[13] The inquiry into baselessness is objective. Lawyers cannot "avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."[14]

As for a reasonable inquiry, the 1983 Advisory Committee Notes to Rule 11 set out several factors that courts sometimes consider, including: how much time was available for investigation before the filing, whether an attorney had to rely on a client for information as to the facts underlying the filing, and whether the filing was based on a plausible view of the law. A legal contention that is contrary to controlling authority reflects a lack of reasonable inquiry *per se*;[15] as do factual contentions that are demonstrably false.[16]

In this case, Mr. Otto's counsel violated Rule 11(b) with respect to no fewer than seven filings covered by Section 27(c): (1) the original complaint; (2) the amended complaint; (3) the "supplemental pleading;" (4) the motion to strike all of the Nano Defendants' affirmative defenses; (5)

---

violation contained in an original pleading and thereby prevents the imposition of sanctions under the PSLRA.").

[9] *See Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

[10] *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).

[11] *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990).

[12] Rule 11(b)(2) requires attorneys to certify that legal contentions made in such motions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

[13] Rule 11(b)(3) requires that attorneys presenting written motions to the court certify that, to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . ., the factual contentions have evidentiary support."

[14] *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994).

[15] *See, e.g., Szabo Food Service, Inc. v. Canteen Corp.* 823 F.2d 1073, 1081 (7th Cir. 1987).

[16] *See, e.g., Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass'n of N. Cal.*, 835 F.2d 1275, 1281(9th Cir. 1987).

the opposition brief to the Nano Defendants' motion to dismiss the original complaint; (6) the opposition to the Nano Defendants' motion to dismiss the amended complaint; and (7) the opposition to the Nano Defendants' motion for forum non conveniens. Mr. Otto himself violated Rule 11(b) with respect to the supplemental pleading.

*The Original Complaint*. The original complaint, which was dismissed in its entirety,[17] contained multiple legally baseless claims for which no reasonable inquiry could have been performed.

Chief among them were the class claims under Section 12(a)(1) of the Securities Act. This claim was the core of the complaint. Of the 78 paragraphs devoted to the "substantive allegations,"[18] 40 are devoted to elements of the claims – i.e. the (erroneous) contentions that XRB is a security and the Nano Defendants were statutory sellers.[19] Section 12 actions also appear to be Mr. Otto's counsel's calling card. The Silver Miller firm has filed at least 11 Section 12-cases against developers of cryptocurrencies or tokens, and the Levi & Korsinsky firm has joined as co-counsel in five of these.[20] Yet despite Mr. Otto's counsel's presumed familiarity with the strictures of Section 12, they seemingly neglected to read one section further down in the Securities Act to Section 13, which provides for a one-year statute of limitations for such claims. The original complaint was filed on January 3, 2019.[21] But the plaintiff on whose behalf it was filed – James Fabian – alleged that he made his last purchase of XRB on December 12, 2017.[22] Although there had been a preceding class action pending during the limitations period (filed by Silver Miller, not coincidentally), no so-called *American Pipe* tolling was available for the class claims because of the Supreme Court's recent and well-publicized decision in *China Agritech v. Resh*.[23]

---

[17] *See* Order Granting Mot. to Dismiss (Dkt. No. 57).

[18] *See* Compl. (Dkt. No. 1) ¶¶ 50-128.

[19] *See id.* ¶¶ 52-61 ("The Allure of XRB"); *id.* ¶¶ 62-71 ("XRB is Not Decentralized"); *id.* ¶ 75-86 ("The Nano Faucet"); *id.* ¶¶ 121-128 ("XRB Are Unregistered Investment Contract Securities").

[20] *See* Decl. of Silvia Jordan ¶¶ 6-7.

[21] *See* Compl.

[22] *Id.* ¶ 134.

[23] 138 S. Ct. 1800 (2018).

Filing a claim that is facially outside the applicable statute of limitations reflects the absence of a reasonable inquiry,[24] as does advancing a claim that is clearly foreclosed by controlling authority.[25] The fact that Mr. Otto's counsel hold themselves out as "experienced in handling complex financial fraud litigation" with "extensive knowledge of the applicable laws,"[26] makes their ignorance of the applicable statute of limitations and the controlling law on the only colorably applicable tolling doctrine even less excusable. The only inference the Court can draw is that Mr. Otto's counsel failed to perform any inquiry – reasonable or otherwise – into the timeliness of the Section 12 claims.

The conclusion that Mr. Otto's counsel failed to conduct a professionally competent inquiry into the timeliness of the Section 12 claims is also supported by counsel's performance at oral argument on the Nano Defendants' motion to dismiss the original complaint. Asked by the Court why it should apply an equitable tolling doctrine that every circuit to consider the question had rejected, Mr. Otto's counsel's best argument was, "Well, I think the Ninth Circuit is pretty progressive."[27] When the Court pressed the matter, and asked what *legal* basis the Ninth Circuit would have for breaking with all other circuits,[28] Mr. Otto's counsel replied, "I wouldn't rely on any law in particular to suggest that."[29] Later oral advocacy in support of a baseless contention in a filing should be considered when assessing compliance with Rule 11.[30]

Remarkably, however, the Section 12 claims – which were facially untimely – were among the *better* pled of the claims contained in the original complaint. Other legally baseless claims included a claim for breach of contract that was missing any well-pled allegations of an agreement – implied or otherwise – between the parties, let alone the terms of the supposed contract;[31] a claim for breach of

---

[24] *See Mir. v. Little Co. of Mary Hospital*, 844 F.2d 646, 653 (9th Cir. 1988).

[25] *See Szabo Food Service,* 823 F.2d at 1081.

[26] *See* Mot. for Class Cert. (Dkt. No. 168), at 26.

[27] Oral Arg. Tr. (Dkt. No. 57), at 5:3-4.

[28] *See id.* at 5:9-11.

[29] *Id.* at 5:12-13.

[30] *See O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir. 1996).

[31] *See* Oral Arg., at 24:13-16 ("**THE COURT:** I would say I don't see that the complaint alleges any kind of express or implied contract. You have to identify what the specific terms are of the contract, and you haven't done that.")

- 5 -

fiduciary duty that failed to include the bare elements of the cause of action, [32] let alone include well-pled factual allegations to support them; a claim for unjust enrichment without any supporting allegations that the plaintiff conferred any tangible benefit to the any of the Nano Defendants;[33] and a claim for "civil conspiracy" that was incomprehensible, and, in any event, is not a cognizable free-standing cause of action under California Law[34]  Mr. Otto's counsel listed negligence as among their client's claims in the complaint's introduction,[35] but neglected to include in the body of the complaint, or make any allegations related to any of its elements.

"Glaring holes" in supporting allegations are sufficient to render a claim baseless,[36] and most of the state law claims in the original complaint rested on nothing but holes.  Given the complaint's obvious focus on the untimely Section 12 claims, the only inference that the Court can draw is that Mr. Otto's counsel topped-off their pleading with a grab-bag of state law claims untethered to the facts alleged in the complaint, presumably in hopes that one or two might survive a motion to dismiss through the application of liberal pleading standards.  Such an approach to pleading is inconsistent with the existence of a "reasonable inquiry."

*The Amended Complaint*.  The amended complaint suffered from all of the same deficiencies as the original complaint (except for Mr. Otto's counsel dropped the civil conspiracy claim),[37] but reflected a far more serious violation of the reasonable-inquiry duty since Mr. Otto's counsel now had actual notice of the flaws.[38]  In considering whether Rule 11 has been violated, courts place great

---

[32] *See id.* at 34:14-16 ("**THE COURT**: "On the fiduciary duty issues, the *Gutierrez* case, which was cited at page 25 of the defendants' opening memo, that has your elements, as does the case Cleveland that I gave you.")

[33] *See id.* at 33:25-34:2 ("**THE COURT:** Here, it's not clear to me what the plaintiffs provided the defendants with that gave them some kind of monetary benefit.")

[34] Mot. to Dismiss (Dkt. No. 33-1), at 31-33.

[35] *See* Compl., at 1.

[36] *DNA Sports Perform. Lab Inc. v. Major League Baseball*, No. 20-CV-00546, 2020 WL 6290374, at *6 (N.D. Cal. Oct. 27, 2020).

[37] *Compare* Compl. *with* Am. Compl. (Dkt. No. 58).

[38] *See* 2d Oral Arg. Tr. (Dkt. No. 69), at 7:5-9 ("**THE COURT:** Well, it's your obligation affirmatively to make sure that your claim falls within the applicable statute of limitations. *This issue was raised on the first round.  You had notice of it at the first round*, and you need to plead facts to show that the claim should proceed." (emphasis added)); *id.* at 8:18-22 ("**THE COURT:** The breach

*(Footnote continued)*

weight on whether counsel proceeds with baseless claims despite actual notice that they are frivolous.[39]

*The Supplemental Pleading.* After Mr. Otto was allowed to intervene in the case following Mr. Fabian's voluntary dismissal,[40] his counsel filed a "supplemental pleading" on his behalf.[41] The supplemental pleading contained factual allegations specific to Mr. Otto's supposed transactions in XRB, but they all turned out to be false.

Indeed, it became clear from Mr. Otto's deposition testimony that his counsel made up the dates and amounts of XRB Mr. Otto was alleged to have purchased on BitGrail and the amount he was alleged to have lost as a result of the exchange's closure. They caused Mr. Otto to allege:

- *On December 18, 2017, Plaintiff opened his BitGrail account. That day, Plaintiff purchased 0.45437198 Ethereum (ETH) on Coinbase's website (coinbase.com). The total purchase price was $350 for the ETH. Plaintiff then exchanged the 0.45437198 ETH for 0.0187292130156 Bitcoin (BTC). Plaintiff then withdrew 0.01867302 of his BTC off Coinbase, which he sent to BitGrail to purchase approximately 200 XRB* [42]

---

of the implied contract claim. *Again*, Mr. Carriel, it seems to me at most what you have here is a relationship, but a relationship does not in and of itself give rise to mutual assent, to an implied contract." (emphasis added)); *cf. id.* at 12:25-16:6 (colloquy demonstrating that even as late as oral argument on the motion to dismiss the amended complaint, Mr. Otto's counsel still did not understand the elements of breach of fiduciary duty); *id.* at 42:24-43:6 ("**THE COURT:** The quasi-contract claim, I don't know how you can state this claim. There is no articulation of how the defendants were enriched or that there's any benefit that was given to them that bears in some way on a claim for restitution which is how the unjust enrichment law is viewed for purposes of the common law.")

[39] *See ITI Internet Servs., Inc. v. Solana Capital Partners, Inc*, No. 05-CV-2010, 2007 WL 666593, at *7 (W.D. Wash. Feb. 27, 2007) (awarding sanctions in part because the plaintiff retained meritless claims in its amended complaint even after the "legal deficiencies" were identified); *cf. Rezvani*, 2019 WL 1100149, at *6 ("[O]nce the Court issued its rulings and dismissed plaintiff's claim, plaintiff agreed to dismiss the securities claim with prejudice and to pursue his other claims in state court. This distinguishes plaintiff's case from those cited by YoJo, where courts awarded sanctions against plaintiffs that filed successive motions or complaints.")

[40] *See* Order Granting in Part Mot. to Intervene (Dkt. No. 160).

[41] *See* Not. and Supp. Pleading (Dkt. No. 161).

[42] Not. and Supp. Pleading ¶ 4.

- *On December 21, 2017, Plaintiff purchased 0.513 ETH for $400. On December 26, 2017, he then withdrew his 0.513 ETH off of the Coinbase exchange, which he then sent to BitGrail to purchase approximately 150 XRB.*[43]
- *As of February 8, 2018, Plaintiff purchased and held on BitGrail approximately 350 XRB with a total purchase price of approximately 0.01867302 BTC and 0.513 ETH, or $750.*[44]

But Mr. Otto's deposition testimony revealed that he has no idea how many XRB he purchased, when he purchased them, or how many were left on BitGrail when it closed.[45] He also confirmed that he has no records by which such facts could be reconstructed.[46]

A false factual assertion is sanctionable *per se*,[47] but, even were this not so, Mr. Otto's counsel's apparent failure to consult with their client about key matters of his personal knowledge reflects a total failure of inquiry.[48] Mr. Otto himself has violated Rule 11(b) by allowing these false allegations about matters of his personal knowledge to be pled in his name.[49]

*The Motion to Strike.* After the Nano Defendants filed their answer to amended complaint, Mr. Otto's counsel filed a motion to strike *all* of the Nano Defendants' affirmative defenses.[50] The motion, which included an attack on such classic affirmative defenses as contributory negligence and assumption of risk,[51] has already been deemed frivolous by the Court.[52] Since the frivolous motion pertained to a "responsive pleading," it is covered by Section 27(c).

---

[43] *Id.* ¶ 5.

[44] *Id.* ¶ 7.

[45] *See* Opp. to Renewed Mot. for Class Cert. (Dkt. No. 180), at 8-11.

[46] *See id.*

[47] *See Pipe Trades Council.*, 835 F.2d at 1281.

[48] *Cf.* Fed. R. Civ. P. 11 advisory committee's notes (reasonable reliance on a client interview may constitute reasonable inquiry). In this case, Mr. Otto appears to have had very little control over his case, *see* Opp. to Renewed Mot. for Class Cert., at 16 – up to and including not knowing how his counsel concocted the allegations about his XRB transactions. *See, e.g., id.* at 9 n.45.

[49] *See Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996) (recognizing that clients are normally responsible for their attorneys' acts.)

[50] *See* Mot. to Strike Answer to Am. Compl. (Dkt. No. 84-1).

[51] *See id.* at 5.

[52] *See* Order Granting in Part, Denying in Part Mot. to Strike (Dkt. No. 127), at 7 ("Fabian moves to strike all of the affirmative defenses raised in the Nano Defendants' answer, including the reservation

*(Footnote continued)*

*Briefing on Dispositive Motions.*  The opposition papers of Mr. Otto's counsel to all three dispositive motions filed in this case contained myriad baseless legal contentions.  A non-exhaustive list is as follows:

- Arguing that the statute of limitations for the Section 12 claims should be equitably tolled because the Mr. Fabian believed that the Nano Defendants were pursuing those claims on his behalf.[53]  The argument was absurd because Mr. Fabian was pursing claims *against* the Nano Defendants.

- Arguing, without any principled basis, that the holding of *China Agritech* should be limited to previous class actions where class certification was denied.[54]  When asked to defend the contention at oral argument, Mr. Otto's counsel evaded the question entirely, falling back on the fact that "the claims were filed only 22 days after the statute of limitations would have been -- would have expired"[55] and a variety of other irrelevant assertions.

- Arguing that the existence of a contract had been adequately pled because there were allegations that Nano Defendants "claimed responsibility for creating XRB" and took a variety of other actions completely unrelated to the plaintiff, Mr. Fabian.[56]

- Arguing that Italy would be an inadequate forum because it does not have similar class action or discovery procedures to the United States,[57] even though it is black-letter law that such criteria are irrelevant for assessing adequacy.[58]

---

to add further affirmative defenses. Given the breadth of the motion, the Court considered sanctioning Fabian for the filing of a frivolous motion which did not meet the basic standards of such a disfavored motion.")

[53] *See* Opp. to Mot. to Dismiss Compl. (Dkt. No. 43), at 8.

[54] *See* Opp. to Mot. to Dismiss Am. Compl. (Dkt. No. 63), at 8.

[55] *See* 2d Oral Arg. Tr., at 7:12-13.

[56] *See* Opp. to Mot. to Dismiss Am. Compl., at 16.

[57] *See* Opp. to Mot. to Dismiss for Forum Non Conveniens (Dkt. No. 91), at 13-14.

[58] *See* Order Denying Mot. to Dismiss for Forum Non Conveniens (Dkt. No. 127), at 13-14 ("Courts routinely reject arguments that limited discovery and the difficulties of certifying a class, as compared to federal courts in the United States, are relevant to a determination of whether an alternative forum is adequate.").

- Arguing – in pure tautological fashion – that under California's choice-of-law rules, California substantive law should apply to the plaintiff's claims because "these claims arise under California law."[59]

These arguments, and others, were either so facially absurd or so directly contradicted by settled law (like the rule that to plead breach of contract one must allege mutual assent by the parties), that they could not possibly reflect a reasonable inquiry into their validity.[60]

*Mandatory Sanctions*

Under Section 27(c)(2) if the Court determines that any one of the filings discussed above violated Rule 11(b), it must impose sanctions.

*Presumption in Favor of Attorneys' Fees and Costs.*

If sanctions must be imposed under Section 27(c)(2), Section 27(c)(3) controls the amount. If the Rule 11(b) violations concern a dispositive motion or responsive pleading, the presumptive sanctions amount should be "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." If, however, a court finds a "substantial failure of any complaint" to comply with Rule 11(b), the presumptive sanctions award is "the reasonable attorneys' fees and other expenses incurred in the action." The imposition of sanctions commensurate with the entirety of the defendants' fees and expenses is harsh, but, "Congress was . . . troubled by the fact that under existing Rule 11 practice, when a court did award Rule 11 sanctions, the award was 'generally insufficient to make whole the victim of a Rule 11 violation; the amount of the sanction was limited to an amount that the court deemed sufficient to deter repetition of the sanctioned conduct, rather than imposing a sanction that equals the costs imposed on the victim of the violation.'"[61] "This concern led to the establishment of the presumption in the PSLRA that full fees and costs were the proper sanction for a violation of Rule 11."[62]

---

[59] *See* Opp. to Mot. to Dismiss for Forum Non Conveniens (Dkt. No. 91), at 23.

[60] *See* Fed. R. Civ. P. 11 advisory committee's notes (in assessing reasonable inquiry, courts may consider whether the challenged contention reflects a "plausible view of the law").

[61] *Gurary*, 303 F.3d at 220 (quoting H. Conf. Rep. No. 104–349, at 39H. Conf. Rep. No. 104–349, at 39).

[62] *Id.*

Given the relatively high-stakes associated with finding that a complaint substantially fails to comply with Rule 11(b), the question of "substantial failure" has been litigated. The lead case on matter is *Gurary v. Nu-Tech Bio-Med, Inc.*, where a panel of the Second Circuit agreed with the appealing defendants that "a substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive."[63] It continued, "[u]nder this interpretation, the district court must examine the qualitative substance of the nonfrivolous claims in order to assess whether these claims were, in fact, legitimate filings that had the potential of prevailing or whether they patently lacked merit and only narrowly avoided being deemed frivolous themselves."[64]

Under this formula it is clear that both of the complaints in this case "substantially failed" to satisfy Rule 11(b)'s standard. The first complaint was dismissed in its entirety, and the only claims asserted there that ultimately survived a Rule 12(b)(6) motion in the amended compliant – for fraud and negligent misrepresentation – failed because the Mr. Otto's counsel failed to allege that any misstatements were made before the plaintiff's final purchase.[65]

Mr. Otto's counsel resituated this claim in the amended complaint by adding the boilerplate allegation that the plaintiff *held* XRB in reliance on some unidentified statement by and unidentified member of the Nano Defendants, but the fraud/negligent misrepresentation allegations turned out to be false in any event. Neither the original plaintiff, Mr. Fabian, nor Mr. Otto could recall hearing a single false or misleading statement at all.[66]

The negligence claim, which was finally pled in the amended complaint, survived the motion to dismiss but stood no chance on summary judgment. It was premised on an Italian judicial decision

---

[63] *Id.* at 222.

[64] *Id.*

[65] *See* Oral Arg. Tr., at 29:5-10 ("**THE COURT:** But, you know, again, all of these – and in this regard, it bleeds over to the fraud claim, the misrepresentation claims -- again, everything in the complaint except for one post, which is pretty innocuous – happened after your client acquired -- I'm not even going to say purchased, but your client acquired the Nano.").

[66] *See* Opp. to Mot. to Consolidate (Dkt. No. 147), at 5-6, 12-13; Opp. to Renewed Mot. for Class Cert., at 7-8.

that in fact *absolves* the Nano Defendants of negligence.[67] So egregious was Mr. Otto's counsel's misrepresentation of the Italian decisions in the amended complaint, that at oral argument one of them was reduced to reading a passage in which the Italian court characterized arguments by Mr. Firano that it subsequently rejected, and attempting to pass it off as the Italian court's findings of fact.[68] In sum, the three claims from the amended complaint that survived the motion to dismiss were nearly as baseless as the frivolous ones discussed above.

In this context, the presumptive amount of sanctions against Mr. Otto and his counsel should be the full amount of the Nano Defendants' attorneys' fees and costs defending the action, which total $701,600.84. The Nano Defendants stand by willing and ready to provide evidentiary support for this figure upon the Court's request.

## CONCLUSION

Based on the foregoing, the Nano Defendants respectfully request that the Court impose sanctions on the Silver Miller law firm, Levi & Korsinsky LLP, Zelle LLP, and Alec Otto jointly in the amount of $701,600.84.

Date: July 27, 2021                           Respectfully submitted,


/s/ Peter Fox_____
Peter Fox
Peter Scoolidge
**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
*Attorneys for Defendants Hieusys, LLC, Colin LeMahieu, Troy Retzer, and Mica Busch*


/s/ Shawn Naunton_____
Shawn Naunton
Devon Galloway
**ZUCKERMAN SPAEDER LLP**
*Attorneys for Defendant Zack Shapiro*

---

[67] *See* Mot. to Dismiss Am. Compl. (Dkt. No. 60), at 4-5.
[68] *See* 2d Oral Arg. Tr., at 30:20-32:14.

|   |   |
|---|---|
| 1 |  |
| 2 | /s/ *Paul J Byrne*_____ |
|   | Paul J. Byrne |
| 3 | **CORNERSTONE LAW GROUP** |
|   | *Attorneys for Defendants Hieusys, LLC, Colin* |
| 4 | *LeMahieu, Troy Retzer, Mica Busch, and Zack* |
|   | *Shapiro* |

- 13 -

NANO DEFENDANTS' OPENING BR. ISO SANCTIONS — Case No: 4:19-cv-54-YGR

## CERTIFICATE OF SERVICE

I hereby certify on July 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants.

/s/ *Paul J Byrne*
Paul J. Byrne